UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
OTHER DIVISION

IN RE:                                        )
                                              )
CAH ACQUISITION COMPANY 7, LLC,               )        No. 19-01298-5-JNC
                                   Debtor.    )        Chapter 11

**TRANSCENDENTAL UNION WITH LOVE AND SPIRITUAL ADVANCEMENT'S**
**MEMORANDUM FOR USE OF STIMULUS FUNDS AND APPLICATION FOR**
**DISTRIBUTION OF FUNDS**

NOW COME Transcendental Union with Love and Spiritual Advancement (hereinafter "TULSA"), and object to the *Trustee's motion for (I) An Order Confirming that (A) Certain Stimulus Funds were Used in Accordance with Applicable Terms and Conditions and (B) (II) An Order Eliminating Any Liability of Trustee and Debtor's Estates for Use of Stimulus Funds* [Case No. 19-01298-5-JNC, Dkt. No. 573], ("Trustee's Motion") as follows:

1.      TULSA had previously objected to the Trustee's Motion in its entirety and for purposes of this Objection and the hearing scheduled for July 29th, will limit its objection to the Trustee's request for use of funds received <u>after the closing</u> of the sale of the Prague Community Hospital.  Previously, TULSA had objected to the methodology the Trustee outlined for use of funds received prior to the closing of the APA.  TULSA, a 501(c)(3) not-for-profit, files this response as the purchaser of the Prague Community Hospital, a Critical Access Hospital ("CAH").

2.      The Trustee had received several "rounds" of funding from the CARES Act.  The Trustee received $260,869.02 on April 10, 2020 from the "First Round" of funds.  The Trustee received $5,545.00 from an "OHA" grant on April 24, 2020.   On April 24, 2020, the Trustee received $78,499 from the "SHIP" grant.  All grants that were made were provided through the CARES Act and deposited based on Medicare billing amounts.  Applications were not submitted

1

for such funds, rather the Department of Health and Human Services (HHS) deposited the funds directly into the account for the Prague Hospital.  As stated above, TULSA is withdrawing its previous objection to the Trustee's use of the funds from the First Round, OHA, or SHIP.

3.     Additional funds were received by the Trustee from HHS through the targeted program, the Rural Relief Fund, on May 6, 2020.  The additional funds were received after the closing and effective date of the APA. The Rural Relief Funds received by the Trustee were $2,896,348.19.

4.     Prior to the closing of the APA, on April 29th, there were a number of issues that that counsel for TULSA requested be changed in the APA.  The Trustee through his counsel specifically stated that "Now is not the time to renegotiate the APA….the original versions of the documents were approved by the Court, so their substance is not up for discussion at this late date." See email Exhibit "A".

5.     On April 30th, TULSA communicated to the Trustee that the CARES Act funding issue was "going to be a problem to prevent a closing".  Counsel for TULSA argued that the HHS funds that "were received were not in the APA or anticipated at the time the Court approved the asset and liability division, it is something that has to be worked through."  Finally, as further evidence this was a material issue for TULSA before closing, counsel communicated to the Trustee counsel that "the seller keeping 100% is not something Dr. Aggarwal (chairman of TULSA), is willing to just sign off on given the obligations, the intent of the stimulus funds, etc." *See* email dated April 30th, attached as Exhibit "B".

6.     It was the Trustee's position that the grant was cash and therefore was an "excluded asset."  TULSA's position was communicated that it was not considered cash, rather was a

conditional grant upon the recipient's future performances and was also meant to compensate for future lost revenues or COVID related expenses.  The Trustee acknowledged that it was "cash received when your client did not own the hospital that can be used to reimburse for COVID expenses and lost revenue since February."  *See* Exhibit "C".

7.     TULSA and the Trustee agreed to close on May 1 with the condition that there needed to be "something drafted and agreed to by the trustee…to be included in the closing documents."  See email dated May 1, 2020 attached hereto as Exhibit "D".  It was agreed that the funds were to be used for specific programs for the use at Prague Hospital.

8.     The Trustee and TULSA worked Friday evening and into the weekend to finalize the APA Addendum (the "Addendum") that reflected the Trustee and TULSA's agreement for use of the CARES Act funds.  The Addendum was negotiated between the parties, relied upon by TULSA to close the APA transaction, and executed by both parties.  The Addendum outlined a specific protocol for funds received from HHS through the CARES Act, SHIP, HRSA, and OHA prior to the closing, and also specifically addressed funds received post-closing through the programs.  Addendum attached hereto as Exhibit "E".

9.     Specifically, within the Addendum, TULSA and the Trustee agreed that the "Addendum is to clarify and provide a mutual agreement of the Parties for cash Funds received prior to the closing but subject to certain Terms and Conditions ("T&Cs") for various programs as described herein."  *See* Addendum, Exhibit "E", Section A.  The Addendum specifically acknowledges that "Seller and Purchaser desire to enter into this Addendum to set forth their understanding and agreement regarding the Pre-Sale and Post-Sale Uses of the Funds and fulfillment of all Compliance Requirements in connection with the Funds." *See* Section H of

Addendum, Exhibit "E".  Additionally, the parties agreed that "[a]ny payments by HHS pursuant to the CARES Act, SHIP, or OHCA received by either Party <u>after</u> transferring ownership of the Assets from Seller to Purchaser <u>belong to Purchaser</u> who shall have all rights, responsibilities and liabilities in connection therewith."  *Emphasis added, See* Section 3 of Addendum, Exhibit "E". The Addendum was the parties attempt at outlining how the CARES Act funds could be distributed, in a similar scheme to what this Court has recently approved by way of the Amended Consent Order.

10.    TULSA and Trustee finalized and executed the Asset Purchase Agreement dated May 2, 2020 with an effective time of closing of May 4, 2020 at 12:01 AM CST.  TULSA and Trustee executed the Addendum on May 2, 2020 with an effective date of May 2, 2020.

11.    As part of the APA, it is anticipated that the Trustee would receive funds that belonged to TULSA after the closing, even separate and apart from the CARES Act grant.  The APA specifically has a protocol for how funds received by the Trustee should be accounted for and distributed post-closing.  Specifically, the process is outlined in section 2.15 of the APA that describes the process for Medicare and Medicaid provider agreement payments.  This process was necessary as Medicare and Medicaid payments and approval for change of ownership takes time to process through the state and CMS, thus the APA outlines how payments received by the Trustee in their bank account, using the previously held taxpayer identification number would be handled post-closing.

**<u>Memorandum</u>**

12.    The APA specifically anticipates that additional documents could be necessary to be executed in connection with the closing and that they shall be binding upon the Seller (Trustee).

"Upon the entry of the Sale Order approving the sale of the Assets to the Purchaser, this Agreement constitutes a legal, valid, and binding obligation of Purchaser, this Agreement constitutes, and all documents required to be executed and delivered at Closing by Seller hereunder or in connection herewith will each constitute, the legal, valid, and binding obligations of Seller, enforceable against it in accordance with their respective terms, subject to general principles of equity." *See* APA Section 3.2 Validity and Enforceability of Agreement.  Here, the Trustee knew that in order to close the APA, it was necessary to execute an Addendum that outlined the Agreement of the parties which was done at the closing.  Therefore, the Addendum should be a binding obligation of the Seller/Trustee.

13.     As this Court has previously held, "[w]hen terms of a contract are clear and unambiguous, a court must interpret the contract as written and words are to be interpreted based on their ordinary meaning." *Swift Fin. Corp v. Steele (In re Steele)*, 2019 WL 3756368 at 11 (2019 US Bankr. Ct., E. Dist. NC), citing *FFP Holdings LLC v. Vitafoam, Inc.*, 576 Fed. Appx. 234 (4th Cir. 2014).  *See* also, *In re Drew Transp. Servs.*, 2016 Bankr. Lexis 4048 at 10, (2016 US Bankr. Ct., E. Dist. NC) where this Court held "when a contract is unambiguous, a court must interpret the contract as written as a matter of law."  Here, TULSA believes the terms of the addendum are unambiguous and the ordinary meaning of funds received after the closing are to "belong to the Purchaser."  While the HHS program and terms and conditions have certain requirements, this Court has already approved those conditions to allow Purchasers to receive such funds. (as entered in the Amended Consent Order and Stipulation between the Trustee and Fairfax Community Hospital and Washington County Hospital.)  These conditions allow for an incentive for the

Trustee and the Trust estate, provide protections for the Trustee, and requirements for the Purchaser for the use of such funds.

14.     The Trustee had previously made a declaration, filed on May 20, 2020 in anticipation of the previously filed motion of the Trustee.  Within the declaration, the Trustee attempts to explain that he "did not fully understand the attestation requirements until after signing the Addendum to Prague's Asset Purchase Agreement…[a]t the time that I signed the Addendum to Prague's APA, I did not know that the additional Funds Prague would receive would be intended to cover lost revenue for the period in which I was responsible for Prague's administration." Paragraph 35 of Declaration of Thomas W. Waldrep, Hr. filed on May 20, 2020, document 588 in this case.  TULSA objects to the Trustee's defense to the enforcement of the Addendum.  As the APA anticipated, additional agreements could be effectuated to close the APA and would be binding upon the parties.  It was only after the Trustee received the additional funds, he wanted to change the agreed upon terms of the Addendum.  As principles of equity would dictate, TULSA relied upon the language of the addendum to close the APA, relied upon the Trustee's representations of how additional funds would be handled in order to close the APA.

## **Relief Requested**

15.     TULSA requests this court follow the negotiated and agreed to Addendum to the APA and order the funds received after the closing from the Rural Relief Fund, in the amount of $2,896,348.19 be transferred to the owner/operator of the hospital, TULSA (subject to the terms and conditions of the HHS program.  TULSA is agreeable to modification of the Addendum to include similar protections, incentives, and terms as the other Consent Orders already entered.

This would provide protection for the trustee consistent with what is already ordered by this Court, and incentives in the amount of $57,926.96

16.    Alternatively, if this Court rejects TULSA's argument to enforce the Addendum language, TULSA would request this Court enter a similar consent order as entered with Fairfax and Washington whereby the remainder of "unused funds" could be distributed to TULSA (after notice and applicable objection period has run.)

_____
Hugh M. Robert
Oklahoma Bar No. 22441
SHERWOOD, McCORMICK & ROBERT
Bank of America Center
15 W. 6th St., Ste. 2800
Tulsa, OK  74119
P:  (918) 592-1144
F:  (918) 592-1149
E:  hugh@sm-oklaw.com

- AND -

/s William C. Smith

_____
William C. Smith, Jr.
NC Bar No. 14199
Manning Fulton & Skinner, PA
3605 Glenwood Ave., Suite 500
Raleigh, NC  27612
P:  919-787-8880
F:  919-325-4623
Email:  smith@manningfulton.com
Local Rule 83.1(d) Counsel


Attorneys for Transcendental Union with Love and Spiritual Advancement

# EXHIBIT A

**Subject:** RE: Proposed changes to APA
**Date:** Wednesday, April 29, 2020 at 4:55:16 PM Central Daylight Time
**From:** Lyday, Jennifer
**To:** Hugh Robert
**CC:** Jim Lanik, Waldrep, Tom
**Attachments:** image001.png, image002.png

Hugh:

Now is not the time to renegotiate the APA.  I don't mind you correcting non-substantive items on these documents or updating them given how much time has gone by since they were originally drafted, but the original versions of the documents were approved by the Court, so their substance is not up for discussion at this late date.

Please remove every substantive change and recirculate another redline.

--Jennifer



**Jennifer B. Lyday**
Partner

**P:** 336.717.1283
**E:** jlyday@waldrepllp.com
**A:** 101 S. Stratford Rd., Ste. 210, Winston-Salem, NC 27104

www.waldrepllp.com

---

**From:** Hugh Robert <hugh@sm-oklaw.com>
**Sent:** Wednesday, April 29, 2020 3:13 PM
**To:** Lyday, Jennifer <jlyday@waldrepllp.com>
**Subject:** [External] Proposed changes to APA

Jennifer, please find attached the redline for the APA.  We are not retaining the contracts for the providers as we are going to do new PEA with them all.  Dr. Aggarwal will meet with them all and discuss with them how it will work tomorrow if we are able to get everything else finalized today.

Hugh M. Robert
Sherwood, McCormick & Robert
28th floor, Bank of America Building
15 W. 6th St., Ste. 2800
Tulsa, OK 74119
918-359-2709 direct number
918-592-1144 main office
918-576-6907 direct fax
hugh@sm-oklaw.com
www.sm-oklaw.com
www.accordadr.com

** PLEASE NOTE NEW SUITE NUMBER 2800 **

CONFIDENTIALITY NOTICE: This electronic mail transmission has been sent by a lawyer. It may contain information that is confidential, privileged, proprietary, or otherwise legally exempt from disclosure. If you are not the intended recipient, you are hereby notified that you are not authorized to read, print, retain, copy or disseminate this message, any part of it, or any attachments. If you have received this message in error, please delete this message and any attachments from your system without reading the content and notify the sender immediately of the inadvertent transmission. There is no intent on the part of the sender to waive any privilege, including the attorney-client privilege, that may attach to this communication. Thank you for your cooperation.

# EXHIBIT B

Monday, July 27, 2020 at 08:36:38 Central Daylight Time

**Subject:** Re: CAH 7 - APA Draft Version
**Date:** Thursday, April 30, 2020 at 7:06:27 PM Central Daylight Time
**From:** Lyday, Jennifer
**To:** Van Swearingen, John, Hugh Robert
**CC:** Jared Nelson
**Attachments:** image001.png, image002.png, image003.png, image004.png

Hugh: The APA does settle the issue. Cash is an excluded asset.  The stimulus funds are cash.

Jennifer B. Lyday
Partner

P:  336.717.1283
E:  jlyday@waldrepllp.com
A: 101 S. Stratford Rd., Ste. 210, Winston-Salem, NC 27104

---

**From:** Hugh Robert <hugh@sm-oklaw.com>
**Sent:** Thursday, April 30, 2020 7:27:34 PM
**To:** Lyday, Jennifer <jlyday@waldrepllp.com>; Van Swearingen, John <jvanswearingen@waldrepllp.com>
**Cc:** Jared Nelson <jaredkentnelson@gmail.com>
**Subject:** [External] Re: CAH 7 - APA Draft Version

Jennifer,

After speaking with Dr. Aggarwal, this last issue is going to be a problem to prevent a closing.

The subject hospital does not have a lot of elective procedures done at the facility and overall he doesn't believe it has had a huge impact of lost revenues due to covid-19 or in general.

Given the funds that were received were not in the APA or anticipated at the time the Court approved the asset and liability division, it is something that has to be worked through.  Of course the lack of guidance leave us to interpret the guidance and terms and conditions.

A few things to note that I discussed with Dr. Aggarwal.  In the requirements, there will be audits and reports that are due prospectively for how the funds are being used, which we would argue is an indication that the funds are to be used for prospective losses, not just past losses of revenues.

One thought is we could have Cohesive pull the revenues from Feb-April and do an annual comparison of revenues as a guidepost for what kinds of declines have been experience if any.  This could provide us with guidance on how the funds should be split between the seller and buyer. Another alternative that Dr. Aggarwal proposed was that to avoid the exercise of going through the accounting, he would propose that the seller keep 20% of the funds and the buyer would get 80% of the funds.  (with the same reporting/audit

If you have any other thoughts on how we can work through this last issue, we are open to doing so but the seller keeping 100% is not something Dr. Aggarwal is willing to just sign off on given the obligations, the intent of the stimulus funds, etc.

Hugh M. Robert
Sherwood, McCormick & Robert

28th floor, Bank of America Building
15 W. 6th St., Ste. 2800
Tulsa, OK 74119
918-359-2709 direct number
918-592-1144 main office
918-576-6907 direct fax
hugh@sm-oklaw.com
www.sm-oklaw.com
www.accordadr.com

** PLEASE NOTE NEW SUITE NUMBER 2800 **

---

**From:** "Lyday, Jennifer" <jlyday@waldrepllp.com>
**Date:** Thursday, April 30, 2020 at 5:39 PM
**To:** Hugh Robert <hugh@sm-oklaw.com>, "Van Swearingen, John" <jvanswearingen@waldrepllp.com>
**Subject:** RE: CAH 7 - APA Draft Version

Hugh: Leave 2.12(b) in. That was agreed to and Court approved. And so put in the Cash purchase price and purchase price language back in. Otherwise, I think this draft is final (unless we need to include something to deal with the final issue).



**Jennifer B. Lyday**

Partner

**P:** 336.717.1283
**E:** jlyday@waldrepllp.com
**A:** 101 S. Stratford Rd., Ste. 210, Winston-Salem, NC 27104

www.waldrepllp.com

---

**From:** Hugh Robert <hugh@sm-oklaw.com>
**Sent:** Thursday, April 30, 2020 4:29 PM
**To:** Van Swearingen, John <jvanswearingen@waldrepllp.com>
**Cc:** Lyday, Jennifer <jlyday@waldrepllp.com>
**Subject:** [External] Re: CAH 7 - APA Draft Version

Here is what I get when I did a compare, thankfully the draft I was working on was not that much different. I took the draft you sent as the "final" and did a compare of the draft I sent to Jennifer that was edited/proposed.

Jennifer, if this draft is good for you (with changes marked), I can prepare an execution copy. (pending any necessary changes or addendums that would be required to address our last outstanding issue).

I am also attaching a copy of the bill of sale execution copy. Once we get the APA finalized, I can then get Dr. Aggarwal to sign both.

Hugh M. Robert
Sherwood, McCormick & Robert
28th floor, Bank of America Building
15 W. 6th St., Ste. 2800
Tulsa, OK 74119
918-359-2709 direct number
918-592-1144 main office
918-576-6907 direct fax
hugh@sm-oklaw.com
www.sm-oklaw.com
www.accordadr.com

** PLEASE NOTE NEW SUITE NUMBER 2800 **

---

**From:** "Van Swearingen, John" <jvanswearingen@waldrepllp.com>
**Date:** Thursday, April 30, 2020 at 2:19 PM
**To:** Hugh Robert <hugh@sm-oklaw.com>
**Cc:** "Lyday, Jennifer" <jlyday@waldrepllp.com>
**Subject:** CAH 7 - APA Draft Version

Hello Hugh,

I was forwarded the draft of the APA you were editing (attached here as CAH 7 – APA (1)), and it does not look like you have been working off the version that was uploaded to and approved by the Court.

The Word version of the approved APA is attached here as CAH 7 – Final Circulated APA.  I ran a redline between the two documents and attached it for your convenience.


Respectfully,
John




**John R. Van Swearingen**

Associate

**P:** 336.738.0112
**E:** jvanswearingen@waldrepllp.com
**A:** 101 S. Stratford Rd., Ste. 210, Winston-Salem, NC 27104

www.waldrepllp.com


CONFIDENTIALITY NOTICE: This electronic mail transmission has been sent by a lawyer. It may contain information that is confidential, privileged, proprietary, or otherwise legally exempt from disclosure. If you are not the intended recipient, you are hereby notified that you are not authorized to read, print, retain, copy or disseminate this message, any part of it, or any attachments. If you have received this message in error, please delete this message and any attachments from your system without reading the content and notify the sender immediately of the inadvertent transmission. There is no intent on the part of the sender to waive any privilege, including the attorney-client privilege, that may attach to this communication. Thank you for your

cooperation.

CONFIDENTIALITY NOTICE: This electronic mail transmission has been sent by a lawyer. It may contain information that is confidential, privileged, proprietary, or otherwise legally exempt from disclosure. If you are not the intended recipient, you are hereby notified that you are not authorized to read, print, retain, copy or disseminate this message, any part of it, or any attachments. If you have received this message in error, please delete this message and any attachments from your system without reading the content and notify the sender immediately of the inadvertent transmission. There is no intent on the part of the sender to waive any privilege, including the attorney-client privilege, that may attach to this communication. Thank you for your cooperation.

# EXHIBIT C

Monday, July 27, 2020 at 08:37:04 Central Daylight Time

**Subject:**   Re: [External] CAH 7 - APA Draft Version
**Date:**   Thursday, April 30, 2020 at 7:19:13 PM Central Daylight Time
**From:**   Lyday, Jennifer
**To:**   Hugh Robert, Van Swearingen, John
**CC:**   Jared Nelson
**Attachments:** image001.png, image002.png, image003.png, image004.png

It's cash that was received when your client did not own the hospital that can be used to reimburse for COVID expenses and lost revenue since February, according to the Trustee's healthcare attorney.

Jennifer B. Lyday
Partner

P:  336.717.1283
E:  jlyday@waldrepllp.com
A: 101 S. Stratford Rd., Ste. 210, Winston-Salem, NC 27104

**From:** Hugh Robert <hugh@sm-oklaw.com>
**Sent:** Thursday, April 30, 2020 8:08:57 PM
**To:** Lyday, Jennifer <jlyday@waldrepllp.com>; Van Swearingen, John <jvanswearingen@waldrepllp.com>
**Cc:** Jared Nelson <jaredkentnelson@gmail.com>
**Subject:** Re: [External] CAH 7 - APA Draft Version

It's conditional cash that have future performances and for future lost revenues.  We agreed to take the liability and risk with Medicare but not this in the APA.

Hugh M. Robert
Sherwood, McCormick & Robert
21st floor, Bank of America Building
15 W. 6th St., Ste. 2800
Tulsa, OK 74119
918-359-2709 direct number
918-592-1144 main office
hugh@sm-oklaw.com
www.sm-oklaw.com

**From:** Lyday, Jennifer <jlyday@waldrepllp.com>
**Sent:** Thursday, April 30, 2020 7:06:27 PM
**To:** Van Swearingen, John <jvanswearingen@waldrepllp.com>; Hugh Robert <hugh@sm-oklaw.com>
**Cc:** Jared Nelson <jaredkentnelson@gmail.com>
**Subject:** Re: CAH 7 - APA Draft Version

Hugh: The APA does settle the issue. Cash is an excluded asset.  The stimulus funds are cash.

Jennifer B. Lyday
Partner

P:  336.717.1283
E:  jlyday@waldrepllp.com
A: 101 S. Stratford Rd., Ste. 210, Winston-Salem, NC 27104

**From:** Hugh Robert <hugh@sm-oklaw.com>
**Sent:** Thursday, April 30, 2020 7:27:34 PM
**To:** Lyday, Jennifer <jlyday@waldrepllp.com>; Van Swearingen, John <jvanswearingen@waldrepllp.com>
**Cc:** Jared Nelson <jaredkentnelson@gmail.com>
**Subject:** [External] Re: CAH 7 - APA Draft Version

Jennifer,

After speaking with Dr. Aggarwal, this last issue is going to be a problem to prevent a closing.

The subject hospital does not have a lot of elective procedures done at the facility and overall he doesn't believe it has had a huge impact of lost revenues due to covid-19 or in general.

Given the funds that were received were not in the APA or anticipated at the time the Court approved the asset and liability division, it is something that has to be worked through.  Of course the lack of guidance leave us to interpret the guidance and terms and conditions.

A few things to note that I discussed with Dr. Aggarwal.  In the requirements, there will be audits and reports that are due prospectively for how the funds are being used, which we would argue is an indication that the funds are to be used for prospective losses, not just past losses of revenues.

One thought is we could have Cohesive pull the revenues from Feb-April and do an annual comparison of revenues as a guidepost for what kinds of declines have been experience if any.  This could provide us with guidance on how the funds should be split between the seller and buyer.  Another alternative that Dr. Aggarwal proposed was that to avoid the exercise of going through the accounting, he would propose that the seller keep 20% of the funds and the buyer would get 80% of the funds.  (with the same reporting/audit

If you have any other thoughts on how we can work through this last issue, we are open to doing so but the seller keeping 100% is not something Dr. Aggarwal is willing to just sign off on given the obligations, the intent of the stimulus funds, etc.

Hugh M. Robert
Sherwood, McCormick & Robert
28th floor, Bank of America Building
15 W. 6th St., Ste. 2800
Tulsa, OK 74119
918-359-2709 direct number
918-592-1144 main office
918-576-6907 direct fax
hugh@sm-oklaw.com
www.sm-oklaw.com
www.accordadr.com

** PLEASE NOTE NEW SUITE NUMBER 2800 **

---

**From:** "Lyday, Jennifer" <jlyday@waldrepllp.com>
**Date:** Thursday, April 30, 2020 at 5:39 PM
**To:** Hugh Robert <hugh@sm-oklaw.com>, "Van Swearingen, John" <jvanswearingen@waldrepllp.com>
**Subject:** RE: CAH 7 - APA Draft Version

Hugh: Leave 2.12(b) in.  That was agreed to and Court approved.  And so put in the Cash purchase price and purchase price language back in.  Otherwise, I think this draft is final (unless we need to include something to deal with the final issue).



**Jennifer B. Lyday**

Partner

**P:** 336.717.1283
**E:** jlyday@waldrepllp.com
**A:** 101 S. Stratford Rd., Ste. 210, Winston-Salem, NC 27104

www.waldrepllp.com

---

**From:** Hugh Robert <hugh@sm-oklaw.com>
**Sent:** Thursday, April 30, 2020 4:29 PM
**To:** Van Swearingen, John <jvanswearingen@waldrepllp.com>
**Cc:** Lyday, Jennifer <jlyday@waldrepllp.com>
**Subject:** [External] Re: CAH 7 - APA Draft Version

Here is what I get when I did a compare, thankfully the draft I was working on was not that much different.  I took the draft you sent as the "final" and did a compare of the draft I sent to Jennifer that was edited/proposed.

Jennifer, if this draft is good for you (with changes marked), I can prepare an execution copy. (pending any necessary changes or addendums that would be required to address our last outstanding issue).

I am also attaching a copy of the bill of sale execution copy.  Once we get the APA finalized, I can then get Dr. Aggarwal to sign both.

Hugh M. Robert
Sherwood, McCormick & Robert
28th floor, Bank of America Building
15 W. 6th St., Ste. 2800
Tulsa, OK 74119
918-359-2709 direct number
918-592-1144 main office
918-576-6907 direct fax
hugh@sm-oklaw.com
www.sm-oklaw.com
www.accordadr.com

** PLEASE NOTE NEW SUITE NUMBER 2800 **

---

**From:** "Van Swearingen, John" <jvanswearingen@waldrepllp.com>
**Date:** Thursday, April 30, 2020 at 2:19 PM

**To:** Hugh Robert <hugh@sm-oklaw.com>
**Cc:** "Lyday, Jennifer" <jlyday@waldrepllp.com>
**Subject:** CAH 7 - APA Draft Version

Hello Hugh,

I was forwarded the draft of the APA you were editing (attached here as CAH 7 – APA (1)), and it does not look like you have been working off the version that was uploaded to and approved by the Court.

The Word version of the approved APA is attached here as CAH 7 – Final Circulated APA.  I ran a redline between the two documents and attached it for your convenience.


Respectfully,
John




**John R. Van Swearingen**

Associate

**P:** 336.738.0112
**E:** jvanswearingen@waldrepllp.com
**A:** 101 S. Stratford Rd., Ste. 210, Winston-Salem, NC 27104

www.waldrepllp.com


CONFIDENTIALITY NOTICE: This electronic mail transmission has been sent by a lawyer. It may contain information that is confidential, privileged, proprietary, or otherwise legally exempt from disclosure. If you are not the intended recipient, you are hereby notified that you are not authorized to read, print, retain, copy or disseminate this message, any part of it, or any attachments. If you have received this message in error, please delete this message and any attachments from your system without reading the content and notify the sender immediately of the inadvertent transmission. There is no intent on the part of the sender to waive any privilege, including the attorney-client privilege, that may attach to this communication. Thank you for your cooperation.
CONFIDENTIALITY NOTICE: This electronic mail transmission has been sent by a lawyer. It may contain information that is confidential, privileged, proprietary, or otherwise legally exempt from disclosure. If you are not the intended recipient, you are hereby notified that you are not authorized to read, print, retain, copy or disseminate this message, any part of it, or any attachments. If you have received this message in error, please delete this message and any attachments from your system without reading the content and notify the sender immediately of the inadvertent transmission. There is no intent on the part of the sender to waive any privilege, including the attorney-client privilege, that may attach to this communication. Thank you for your cooperation.
CONFIDENTIALITY NOTICE: This electronic mail transmission has been sent by a lawyer. It may contain information that is confidential, privileged, proprietary, or otherwise legally exempt from disclosure. If you are not the intended recipient, you are hereby notified that you are not authorized to read, print, retain, copy or disseminate this message, any part of it, or any attachments. If you have received this message in error, please delete this message and any attachments from your system without reading the content and notify the sender immediately of the inadvertent transmission. There is no intent on the part of the sender to waive any privilege, including the attorney-client privilege, that may attach to this communication. Thank you for your cooperation.

# EXHIBIT D

**Subject:** RE: [External] Provider Relief Funds - for Prague
**Date:** Friday, May 1, 2020 at 2:54:12 PM Central Daylight Time
**From:** Lyday, Jennifer
**To:** Hugh Robert
**CC:** Waldrep, Tom, Jim Lanik, Van Swearingen, John, Kelly, Holly, Jared Nelson
**Attachments:** image001.png, image002.png, image005.png, image006.png

Hugh: See my comments below in red. If you agree, start drafting. We will report this as part of the Trustee's Status Report to be filed momentarily.

--Jennifer



**Jennifer B. Lyday**
Partner
**P:** 336.717.1283
**E:** jlyday@waldrepllp.com
**A:** 101 S. Stratford Rd., Ste. 210, Winston-Salem, NC 27104

www.waldrepllp.com

---

**From:** Hugh Robert <hugh@sm-oklaw.com>
**Sent:** Friday, May 1, 2020 3:06 PM
**To:** Lyday, Jennifer <jlyday@waldrepllp.com>
**Cc:** Waldrep, Tom <twaldrep@waldrepllp.com>; Jim Lanik <jlanik@waldrepllp.com>; Van Swearingen, John <jvanswearingen@waldrepllp.com>; Kelly, Holly <Holly.Kelly@us.gt.com>; Jared Nelson <jaredkentnelson@gmail.com>
**Subject:** Re: [External] Provider Relief Funds - for Prague

Jennifer,

We still want to close but the problem is that this issue was not specifically addressed in the APA or by the Court's order. There are still significant problems and challenges to what is proposed by your health care attorney.

We would propose to close today with a caveat that we will need to have something drafted and agreed to by the trustee to this effect (to be included in the closing documents). The funds should be held in a restricted fashion and not spent until several conditions can be met. Agreed. First, the Court should approve any distribution of the funds after application is made and documentation provided for how it is to be distributed with notice to be given to HHS and Medicare for them to approve or provide guidance. Agreed, with notice as required by the Bankruptcy Code/Rules. Second, any of the reporting, auditing, or other compliance related to the spend of the money received would be covered by the trustee. Agreed, for the money received by the Trustee prior to closing. If there are funds that remain in the restricted account for the specific uses as required by HHS, then TULSA may seek to use the funds for the permitted purposes. Agreed. The funds are intended for the hospital's use for the specific programs, and while we intended to take on the liabilities that Medicare had required, this is a new liability you are asking us to take on as part of this transaction.

Page 1 of 4

The concerns we have related to the funds are that while it can include compensation for items going backwards, it has a forward reporting requirement and intended use for future as well.  If it was only intended for previous services, then that would mean you should also be collecting the funds received from the other hospitals that closed before the funds were deposited.  They took the funds and the liability that goes with it.

Additionally, unless the Trustee specifically directed the hospital to spend/invest the money for Covid-19 purposes, which has not occurred, then we have problems. As you know, Medicare likes to clawback funds that they deem inappropriately used, and I wouldn't be surprised to see them chasing these funds in the aftermath.  The Terms and Conditions also include other measures to help prevent fraud and misuse of the funds. All recipients will be required to submit documents sufficient to ensure that these funds were used for healthcare-related expenses or lost revenue attributable to coronavirus (again as the responsible party, we cannot attest to this when the trustee will be controlling and deciding how to use the funds short of the approvals process we are proposing). There will be significant anti-fraud and auditing work done by HHS including the work of the Office of the Inspector General which puts us at great risk if we cant come up with a way to handle this.

Of course once the funds are spent and disbursed, there will be no opportunity for indemnification or remedy for TULSA to ensure additional liability is not added to TULSA.

If you have other suggestions on how we can resolve this last piece, please let us know.  If we need to get on a call to work through it, I can have our team ready to do so.

We remain ready to close if we can work through this last open item.


Hugh M. Robert
Sherwood, McCormick & Robert
28th floor, Bank of America Building
15 W. 6th St., Ste. 2800
Tulsa, OK 74119
918-359-2709 direct number
918-592-1144 main office
918-576-6907 direct fax
hugh@sm-oklaw.com
www.sm-oklaw.com
www.accordadr.com

** PLEASE NOTE NEW SUITE NUMBER 2800 **

---

**From:** "Lyday, Jennifer" <jlyday@waldrepllp.com>
**Date:** Friday, May 1, 2020 at 10:47 AM
**To:** Hugh Robert <hugh@sm-oklaw.com>
**Cc:** "Waldrep, Tom" <twaldrep@waldrepllp.com>, Jim Lanik <jlanik@waldrepllp.com>, "Van Swearingen, John" <jvanswearingen@waldrepllp.com>, "Kelly, Holly" <Holly.Kelly@us.gt.com>
**Subject:** Provider Relief Funds - for Prague

Hugh:

See below for information from the Trustee's healthcare attorney refuting your client's interpretation of the proper use of the stimulus funding.

The Trustee must know before 3:00 p.m. EST today whether your client is going to close (to insert into the Trustee's Status Report that must be filed by 5:00 p.m. EST today).

Either way, the Trustee is not going to transfer the funds to TULSA.

The Trustee is currently exploring his options in the event TULSA chooses not to close the transaction.

--Jennifer



**Jennifer B. Lyday**

Partner

**P:** 336.717.1283
**E:** jlyday@waldrepllp.com
**A:** 101 S. Stratford Rd., Ste. 210, Winston-Salem, NC 27104

www.waldrepllp.com

**Background on CARES Act Funding – Information Supplied to Date By HHS**

The CARES Act, HHS guidance, and Terms and Conditions all make clear that the Provider Relief Funds received by Prague Hospital on April 10, 2020, are not solely for prospective use.  Rather, as outlined below, the funds are for healthcare related expenses and lost revenues that are attributable to coronavirus *dating back to January 31, 2020*.

Under the CARES Act, Congress allocated $100 billion "to prevent, prepare for, and respond to coronavirus, domestically or internationally, for necessary expenses to reimburse . . . eligible health care providers for health care related expenses or lost revenues that are attributable to coronavirus." Pub. L. 116-136.  Eligible health care providers are those providers "that provide diagnoses, testing, or care for individuals with possible or actual cases of COVID-19." *Id.*

HHS has made clear that that it "broadly views every patient as a possible case of COVID-19." HHS.gov, *CARES Act Provider Relief Fund*, https://www.hhs.gov/coronavirus/cares-act-provider-relief-fund/index.html (last visited May 1, 2020).  HHS has also explained that the initial $30 billion it distributed—which is what Prague received since it received the money on April 10, 2020—was "proportionate to providers' share of Medicare fee-for-service reimbursements in 2019." *Id.*

The "Relief Fund Payment from Initial $30 Billion General Distribution – Terms and Conditions" make clear that the funds are for "diagnoses, testing, or care for individuals with possible or actual cases of COVID-19" provided *after January 31, 2020*.  Additionally, consistent with the appropriation language from the CARES Act, the Terms and Conditions specify that the funds are to be used "to prevent, prepare for, respond to coronavirus."  Thus, the funds are reimbursement "for health care related expenses or lost revenues that are attributable to coronavirus."

CONFIDENTIALITY NOTICE: This electronic mail transmission has been sent by a lawyer. It may contain information that is confidential, privileged, proprietary, or otherwise legally exempt from disclosure. If you are not the intended recipient, you are hereby notified that you are not authorized to read, print, retain, copy or disseminate this message, any part of it, or any attachments. If you have received this message in error, please delete this message and any attachments from your system without reading the content and notify the sender immediately of the inadvertent transmission. There is no intent on the part of the sender to waive any privilege, including the attorney-client privilege, that may attach to this communication. Thank you for your cooperation.

CONFIDENTIALITY NOTICE: This electronic mail transmission has been sent by a lawyer. It may contain information that is confidential, privileged, proprietary, or otherwise legally exempt from disclosure. If you are not the intended recipient, you are hereby notified that you are not authorized to read, print, retain, copy or disseminate this message, any part of it, or any attachments. If you have received this message in error, please delete this message and any attachments from your system without reading the content and notify the sender immediately of the inadvertent transmission. There is no intent on the part of the sender to waive any privilege, including the attorney-client privilege, that may attach to this communication. Thank you for your cooperation.

# EXHIBIT E

## ADDENDUM TO ASSET PURCHASE AGREEMENT

This Addendum to Asset Purchase Agreement ("Addendum") is made as of May 2, 2020 ("Effective Date"), by and between Thomas W. Waldrep, Jr., as Chapter 11 Trustee ("Seller" or "Trustee") for CAH Acquisition Company 7, LLC d/b/a Prague Community Hospital ("Debtor") and Transcendental Union with Love and Spiritual Advancement, an Oklahoma not-for-profit corporation ("Purchaser").

A.  Seller and Purchaser are parties to an Asset Purchase Agreement, dated May 2, 2020 ("Agreement"), pursuant to which Seller is selling and Purchaser is purchasing substantially all the assets of Debtor ("Assets"). Certain Assets were excluded in Schedule 1 to the Agreement, including "all cash and cash equivalents on hand as of the Closing." This Addendum is to clarify and provide a mutual agreement of the Parties for cash Funds received prior to the closing but subject to certain Terms and Conditions ("T&Cs") for various programs as described herein.

B.  On April 10, 2020, Seller received a cash payment from the U.S. Department of Health and Human Services ("HHS") in the amount of $260,869.02, pursuant to the CARES Act Provider Relief Fund ("CARES Act"), a Grant from the Small Rural Hospital Improvement Program ("SHIP") in the amount of $78,499.00, pursuant to Health Resources and Services Administration ("HRSA") guidelines, and an Oklahoma Health Care Authority ("OHCA") Grant in the amount of $5,545.00 ("Funds").

C.  By accepting the Funds, Seller agreed to certain T&Cs) promulgated and required by HHS, SHIP, and OHCA in connection with the receipt and use of such Funds.

D.  The Funds may be used by Seller in accordance with the T&Cs for costs incurred or revenue lost before transferring ownership of the Assets pursuant to the Agreement ("Pre-Sale Uses").

E.  Any remaining Funds may be used by Purchaser in accordance with the T&Cs for costs incurred or revenue lost after transferring ownership of the Assets pursuant to the Agreement ("Post-Sale Uses").

F.  All Funds must be used for permitted purposes and are subject to various documentation, reporting, audit, and other compliance requirements under the T&Cs, the CARES Act, and any regulations promulgated pursuant thereto ("Compliance Requirements").

G.  Substantially all the Compliance Requirements will have to be satisfied by Seller, Purchaser, or both after closing under the Agreement.

H.  Seller and Purchaser desire to enter into this Addendum to set forth their understanding and agreement regarding the Pre-Sale and Post-Sale Uses of the Funds and fulfillment of all Compliance Requirements in connection with the Funds.

NOW, THEREFORE, in consideration of the foregoing recitals and the mutual covenants hereinafter set forth, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, hereby agree as follows:

1.    **Recitals.** The foregoing recitals are true and correct and are incorporated in this Addendum by this reference.

2.    **Defined Terms.** All terms used but not defined herein have the meanings ascribed to them in the Agreement.

3.    **Scope of Addendum.** This Addendum applies only to Funds received by Seller before transferring ownership of the Assets pursuant to the Agreement. Any payments by HHS pursuant to the CARES Act, SHIP Program, or OHCA received by either Party after transferring ownership of the Assets from Seller to Purchaser belong to Purchaser, who shall have all rights, responsibilities and liabilities in connection therewith.

4.    **Conditions to Distribution.** Before any Funds are distributed from Debtor's bankruptcy estate, the following conditions must be satisfied to the reasonable satisfaction of the other Party:

    a.    Application and notice must be filed with the Bankruptcy Court, in accordance with the Bankruptcy Code and applicable rules of procedure, including notice to both Purchaser and Seller.  Such application should include the amount sought and the Party's intended use of the Funds for the three programs of which it seeks disbursement;

    b.    The Bankruptcy Court must approve such application for a distribution of the Funds; and

    c.    Seller must include HHS as a notice party on the application filed with the Bankruptcy Court.

    d.    Seller must include OHCA as a notice party on the application filed with the Bankruptcy Court.

5.    **Priority of Distribution.** All distributions for Pre-Sale Uses shall be made before any distribution for Post-Sale Uses may be made; provided, however, all applications for the former shall be filed with the Bankruptcy Court within fourteen (14) days after the Effective Date. Purchaser shall be entitled to make application for the remainder of Funds not otherwise requested by Seller in his application immediately after Seller has filed his application for Pre-Sale Uses, or if Seller does not file such application, upon the expiration of the fourteen day period described herein.

6.    **Costs of Compliance Requirements.** All costs associated with fulfilling the Compliance Requirements related to Pre-Sale Uses of the Funds, whether borne by Seller, or Purchaser, shall be paid as "administrative expenses" of the Debtor's bankruptcy estate, if approved as such by the Bankruptcy Court.  All costs associated with fulfilling the Compliance Requirements related to the Post-Sale Uses of the Funds, whether borne by Seller or Purchaser,

shall be the responsibility of the Purchaser. After the Bankruptcy Case is closed, each Party shall be responsible for its own costs associated with fulfilling the Compliance Requirements.

7. **Representations and Warranties.**

a.     Seller represents and warrants to Purchaser as follows:

i.     Seller has accepted and will use the Funds for Pre-Sale Uses in accordance with the CARES Act, the Small Rural Hospital Improvement Program, OHCA, and all T&Cs;

ii.    Seller has taken or will take all actions reasonably necessary to fulfill the Compliance Requirements; and

iii.   Seller is not aware of any fact or circumstance relating to its receipt and acceptance of the Funds or its use of the Funds for Pre-Sale Uses that would result or reasonably could result in a violation of Law, including without limitation with respect to the Compliance Requirements.

b.     Purchaser represents and warrants to Seller as follows:

i.     Purchaser will accept and use the Funds, if at all, for Post-Sale Uses in accordance with the CARES Act, the Small Rural Hospital Improvement Program, OHCA, and all T&Cs;

ii.    Purchaser will take all actions reasonably necessary to fulfill the Compliance Requirements; and

iii.   Purchaser is not aware of any fact or circumstance relating to its receipt and acceptance of the Funds or its use of the Funds for Post-Sale Uses that would result or reasonably could result in a violation of Law, including without limitation with respect to the Compliance Requirements.

c.     The foregoing representations and warranties of Seller and Purchaser are made as of the Effective Date but shall be continuing until termination of this Addendum. In the event either Party becomes aware of any fact or circumstance that renders any aspect of its representations and warranties herein untrue in any respect, such Party shall immediately notify the other Party thereof in writing.

8.     **Termination.**  The provisions of this Addendum shall terminate two (2) years after the Effective Date, unless expressly provided otherwise.

9.     **Counterparts.** This Addendum may be executed by the Parties hereto in separate counterparts, each of which when executed shall be deemed to be an original but all of which taken together shall constitute one and the same agreement.  All signatures of the Parties to this Addendum may be transmitted by email or facsimile, and such email or facsimile of a Party's

signature will, for all purposes, be deemed to be the original signature of such Party and will be binding upon such Party.

IN WITNESS WHEREOF, the undersigned have executed this Addendum as of the Effective Date.

SELLER: Thomas W. Waldrep, Jr., as Chapter 11 Trustee for CAH Acquisition Company 7, LLC d/b/a Prague Community Hospital

By:_____
Print Name: Thomas W. Waldrep, Jr.
Title: Trustee

PURCHASER: Transcendental Union with Love and Spiritual Advancement

By:_____
Print Name: Dr. Vishal Aggarwal, M.D.
Title: President

signature will, for all purposes, be deemed to be the original signature of such Party and will be binding upon such Party.

IN WITNESS WHEREOF, the undersigned have executed this Addendum as of the Effective Date.

SELLER: Thomas W. Waldrep, Jr., as Chapter 11 Trustee for CAH Acquisition Company 7, LLC d/b/a Prague Community Hospital

By:_____

Print Name: Thomas W. Waldrep, Jr.

Title: Trustee

PURCHASER: Transcendental Union with Love and Spiritual Advancement

By:_____

Print Name: Dr. Vishal Aggarwal, M.D.

Title: President

4

<u>CERTIFICATE OF SERVICE</u>

The undersigned does hereby certify that on this 20th day of May, 2020, the foregoing Notice of Special Appearance was filed via CM/ECF upon the following:

Rayford K. Adams, III on behalf of Debtor

Jason L. Hendren on behalf of Trustee Thomas W. Waldrep, Jr.

Rebeca F. Redwine on behalf of Trustee Thomas W. Waldrep, Jr.

Benjamin E.F.B. Waller on behalf of Trustee Thomas W. Waldrep, Jr.

James C. Lanik on behalf of Trustee Thomas W. Waldrep, Jr.

Jennifer B. Lyday on behalf of Trustee Thomas W. Waldrep, Jr.

Thomas W. Waldrep, Jr. on behalf of Trustee Thomas W. Waldrep, Jr.

Marjorie K. Lynch on behalf of Bankruptcy Administrator Marjorie K. Lynch

Kirstin E. Gardner on behalf of Bankruptcy Administrator Marjorie K. Lynch

John Paul H. Cournoyer on behalf of Creditor Sun Finance, Inc., Creditor Paul L. Nusbaum, Creditor Steven F. White, and Interested Party Rural Community Hospitals of America, LLC

Nancy A. Peterman on behalf of Health Care Ombudsman Suzanne Koenig

Brian R. Anderson on behalf of Health Care Ombudsman Suzanne Koenig

William Walt Pettit on behalf of Creditor Complete Business Solutions Group, Inc.

Paul A. Fanning on behalf of Interested Party Cohesive Healthcare Management & Consulting, LLC

William P. Janvier on behalf of Boa Vida Foundation, Inc.

Ross A. Plourde on behalf of Cohesive Healthcare Management & Consulting, LLC

The undersigned does further certify that a copy of the foregoing has been mailed via electronic mail to:

13

Quinn, Michael J. (CIV), Michael.Quinn3@usdoj.gov, on behalf of the U.S. Department of Health & Human Services

Seligman, Phillip (CIV), Phillip.Seligman@usdoj.gov, on behalf of the U.S. Department of Health & Human Services

_____
Hugh M. Robert
Oklahoma Bar No. 22441
SHERWOOD, McCORMICK & ROBERT
Bank of America Center
15 W. 6th St., Ste. 2800
Tulsa, OK  74119
P:  (918) 592-1144
F:  (918) 592-1149
E:  hugh@sm-oklaw.com

Attorney for Transcendental Union with Love and Spiritual Advancement

- AND -

/s William C. Smith
_____
William C. Smith, Jr.
NC Bar No. 14199
Manning Fulton & Skinner, PA
3605 Glenwood Ave., Suite 500
Raleigh, NC  27612
P:  919-787-8880
F:  919-325-4623
Email:  smith@manningfulton.com

Attorneys for Transcendental Union with Love and Spiritual Advancement

14