**SO ORDERED.**

**SIGNED this 31 day of July, 2020.**

_____
**Joseph N. Callaway**
**United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF NORTH CAROLINA
# GREENVILLE DIVISION

| | |
|---|---|
| In Re:<br><br>CAH ACQUISITION COMPANY 7, LLC,<br>d/b/a Prague Community Hospital,<br><br>Debtor. | Case No.<br><br>19-01298-5-JNC<br><br>Chapter 11 |

## ORDER DENYING REQUEST FOR DECISION AS A MATTER OF LAW

The matter before the court is the request for a decision as a matter of law on the Motion for (I) an Order Confirming that (A) Certain Stimulus Funds Were Used in Accordance with Applicable Terms and Conditions and (B) Trustee May Transfer any Remaining Stimulus Funds to Purchasers; and (II) an Order Eliminating Any Liability of Trustee and Debtors' Estates for Use of Stimulus Funds (Dkt. 573; the "Motion") filed May 15, 2020, by Thomas W. Waldrep, Jr., as the chapter 11 trustee in this case (the "Trustee"); his related motion filed June 5, 2020 seeking authority to enter a proposed Consent Order and Stipulation Resolving the Motion in Part (Dkt. 612; the "Consent Order Motion"); and the supplementation regarding both motions contained in the Brief in Support of the Motion (Dkt. 665; the "Trustee Brief") filed July 27, 2020.

1

Transcendental Union with Love and Spirit ("TULSA") is a subject of the Motion and Consent Order Motion, and the respondent here. TULSA did not file a direct response in opposition to the Motion or Consent Order Motion, but it has maintained a constant position on the controversy and filed a memorandum of law (Dkt. 660; the "Tulsa Brief") opposing the relief sought by the Trustee in the Motion and now the Consent Order Motion. Since the Tulsa Brief was timely filed under a scheduling order entered at the agreement and request of both parties, the court will accept the Tulsa Brief as an objection to the Motion and Consent Order Motion.

Per the agreed Second Amended Scheduling Order (Dkt. 660), a telephonic, non-evidentiary hearing was held on July 29, 2020, solely to consider issues of law raised by the parties, with the court sitting in Greenville, North Carolina. Presenting respective arguments at the hearing were Jennifer B. Lyday, Esq., on behalf of the Trustee and Hugh M. Robert, Esq., on behalf of TULSA. At the conclusion of the hearing, and after considering the record and the arguments of counsel, the court announced from the bench that questions of material fact remain, that neither party could prevail as a matter of law, and that a subsequent evidentiary hearing is required. This Order provides further basis for that decision.

The following facts are deemed undisputed for purposes of this decision. The Trustee holds a total $3,290,722.63 (the "Received Proceeds") on behalf of the bankruptcy estate received in several tranches from the United States Treasury under the Coronavirus Aid, Relief, and Economic Security Act, P.L. 116-136 [HR 748], 134 Stat. 281 (signed into law Mar. 27, 2020) (the "CARES Act"). The Received Proceeds relate to the coronavirus pandemic, its economic effect upon, and a share of reimbursement for medical services and cash infusion for medical facilities serving largely rural areas qualifying as "Critical Access Hospitals" ("CAH") under federal law. The debtor operated a CAH facility located in Prague, Oklahoma, until May 4, 2020 at 12:01 AM CST (the "Closing Date"). At that moment, under an asset purchase agreement (the "APA") dated May 2,

2020, entered after approval of the Trustee's motion for approval of sale under section 363 of the Bankruptcy Code, TULSA purchased and took over healthcare operations at the Prague CAH facility. The closing appears to have been prolonged and at times contentious. To facilitate closing, TULSA and the Trustee executed an Addendum to the APA dated May 2, 2020 (the "Addendum"). The APA was approved by the court in the context of the sale motion, but the Addendum was not presented to it. The parties dispute its legal and binding effect, and they differ as to the reasonable interpretation of its key terms.

From the Received Proceeds, the Trustee contends that under the CARES Act the bankruptcy estate is entitled to retain $1,763,256.48 (the "Used Funds"), and that he is prepared to make attestations concerning the Used Funds to the United States Department of Health and Human Services ("DHHS") as required under the CARES Act. The Trustee maintains that the Used Funds are, among other things, the equivalent of accounts receivable, contract rights, and operational statutory reimbursement rights that were expressly retained by him under the sale order, were not sold to TULSA under the APA (or its Addendum), and otherwise cannot be transferred by the Trustee to TULSA under relevant sections of the CARES Act and DHHS guidelines. If the Addendum did transfer rights to proceeds related prior to the Closing Date to TULSA (as it contends), the Trustee asserts that the Addendum is not effective to transfer assets or alter the material terms of the APA since it was not presented to or approved by the court in the sale process.

The balance of $1,527,466.15 (the "Unused Funds"), the Trustee states, pertains to operations and other CAH entitlements accruing or related to operations on and after the Closing Date. Consequently, the Trustee agrees that the bankruptcy estate may not retain the Unused Funds under the CARES Act. As a result, the Trustee maintains the Unused Funds must either be returned to the government or transferred to TULSA—but only after it directly provides (or obligates itself

to provide) the information and attestations required under the CARES Act to DHHS, and approval of this court is obtained, whether by consent order or on decision after a contested hearing.

TULSA disagrees with the Trustee's division of the Received Proceeds into the amounts reflected in the Used Funds and Unused Funds. TULSA argues that under the terms of the APA and Addendum, it instead is entitled as a matter of indisputable contract terms to receive and retain at least $2,896,348.19 (the "Requested Amount") from the Received Proceeds. TULSA asks that the Trustee be ordered to transfer the Requested Amount directly to it, at which time TULSA will make the required DHHS attestations as to those funds. Alternatively, TULSA requests that the court order the Trustee to make the necessary attestation concerning the Unused Funds and retain those funds pending further hearing. In response, the Trustee relays that he cannot attest to DHHS for funds received if the Requested Amount, the Unused Funds, or some other amount is property of TULSA rather than the bankruptcy estate, particularly for amounts earned and accruing after the Closing Date. As a result, in the absence of an agreement to the contrary, the Trustee reports that he can attest for and retain the Used Funds only and may be required to return the Unused Funds to DHHS. The attestations are currently due on August 4, 2020.

TULSA also argues that a substantial portion of Received Proceeds relates to a capital infusion for the Prague CAH to enable it to continue to fight the coronavirus pandemic in the future rather than an accounts receivable attribution. If so, no evidence in support of the position has yet been promulgated as to that position.

The present positions of both parties are rife with factual disputes. For example, the court is asked by TULSA to discern the intent of the parties as to the Received Funds based on the breadth and effectiveness of the Addendum based on a series of emails between counsel for the parties attached as exhibits to the Tulsa Brief. Setting aside for now the admissibility of those documents and the oral motion to strike made by counsel for the Trustee at the hearing as barred under Rule

4

408 of the Federal Rules of Evidence, the very presentation of the emails constitutes evidence of a dispute over the reasonableness of terms and the intent of the parties concerning their respective interpretations of the APA and Addendum. The attempt to have that issue decided by these emails highlights the existence of a substantial question of fact that could not be decided at a "legal issues only" hearing. The court can only determine that issue after hearing testimony from the parties, ruling on objections, and considering properly admissible documentary evidence. The court will therefore reserve the question of admissibility of the emails for a later evidentiary hearing.

Also, should his position survive the intent and contractual terms argument of TULSA at an evidentiary hearing, the Trustee's division of the money at issue into the Used Funds and Unused Funds buckets has not been supported by stipulations or undisputed evidence entered into the record. The Trustee reports that the proposed division is based, at least in large part, on attribution of Medicare and Medicaid reimbursement rights, CAH regulations and accounts receivable for work performed and operations occurring before and after the Closing Date. TULSA challenges those assessments as a matter of proof, noting that only the conclusion and not the support has been shown. Determining the correct split of ownership of a pool of funds based on the date of work performed and operations occurring, where the numbers are disputable and no hard evidence has been placed into evidence, is by definition a question of fact.

Next, from the hearing, it would appear that the parties are no longer in agreement as to the terms of the proposed consent order from the Consent Order Motion (Dkt. 612). If the parties once but no longer agree, the court cannot draft provisions of a consent order as fleetingly requested by TULSA at the hearing. A substantial difference of opinion as to proper division of more than $3 million dollars is not something the court can divide up on its own without evidence and on a whim. A consent order obviously requires agreement as to the material terms it is meant to address, and if the parties cannot agree on those terms, the court will not substitute a guess of its own.

If the parties can agree on some portions of this dispute without resolving the matter as a whole, then they should file stipulations of agreed facts as directed in the Scheduling Order, which were due on July 27, 2020, but not presented. Or if the parties are now in a position to agree on the proper disposition of the funds, the Consent Order Motion can be re-scheduled on short notice. However, if no agreement is reachable on the Consent Order Motion, it should be withdrawn by the Trustee.

Finally, the Trustee reports that he faces a hard deadline of August 4, 2020, the date by which attestation to DHHS concerning the Received Funds must be uploaded. The Trustee reports that he presently can only attest to the Used Funds based on information available to him, and the court will not second guess or require that the Trustee attest as to matters beyond his knowledge. If under the CARES Act some of the Received Funds must be returned, then the Trustee has no choice other than to follow the law.

**THEREFORE**, for the reasons stated above and otherwise appearing in the record, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** as follows:

1. The requests of the parties in the Trustee Brief and the Tulsa Brief for a ruling on the Motion and Consent Order Motion as a matter of law are **DENIED**.

2. Within fourteen (14) days hereof, the parties must confer and provide to the court a proposed contested hearing scheduling order and report in form substantially similar to E.D.N.C. Local Bankruptcy Rule No. 7016-1 concerning the required evidentiary hearing, including expected witnesses; a document list with reservation of objections; counsel and witness availability in August and September; an estimated length of time necessary for the hearing; and the agreed method of hearing (live or videoconference).

3. The Trustee is directed to proceed with the DHHS attestation process.

4. The Trustee is directed to address or withdraw the Consent Order Motion if no consent

order is now agreed upon. If an agreement is reached, the court will, upon proper request, schedule and enter short notice on a hearing to consider the matter.

**END OF DOCUMENT**