**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**GREENVILLE DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **CAH ACQUISITION COMPANY 7, LLC, d/b/a PRAGUE COMMUNITY HOSPITAL,** | ) ) ) | **Case No. 19-01298-5-JNC** |
| | ) | **Chapter 11** |
| Debtor. | ) | |
| | ) | |

**MOTION FOR ORDER TO APPROVE COMPROMISE AND SETTLEMENT**
**AGREEMENT PURSUANT TO RULE 9019**

NOW COMES Thomas W. Waldrep, Jr., the duly appointed Chapter 11 Trustee (the "Trustee") for CAH Acquisition Company #7 d/b/a Prague Community Hospital, (the "Debtor"), jointly-administered along with *In re CAH Acquisition Company #1, LLC d/b/a Washington County Hospital*, Case No. 19-00730,[1] (collectively, the "Debtors") and hereby moves the Court, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an Order to approve and authorize the Trustee to compromise and settle claims between and among (a) the Trustee, (b) creditors Paul Nusbaum and Steve White ("Nusbaum/White"), (c) creditor Complete Business Solutions Group, Inc. ("CBSG"), and (d) creditor and management company Cohesive Healthcare Management & Consulting LLC ("Cohesive" and, together with the Trustee, CBSG, and Nusbaum/White, the "Mediation Parties") in the Oswego Case, the Horton

---

[1] The Court has entered orders directing the procedural consolidation and joint administration of the following debtors; cases: CAH Acquisition Company #1, LLC, d/b/a Washington County Hospital, Case No. 19-00730 (the "Washington Case"); CAH Acquisition Company #2, LLC, d/b/a Oswego Community Hospital, Case No. 19-01230 (the "Oswego Case"); CAH Acquisition Company #3, LLC, d/b/a Horton Community Hospital, Case No. 19-01180 (the "Horton Case"); CAH Acquisition Company #6, LLC, d/b/a I-70 Community Hospital, Case No. 19-1300 (the "I-70 Case"); CAH Acquisition Company #7, LLC, d/b/a Prague Community Hospital, Case No. 19-01298 (the "Prague Case"); CAH Acquisition Company #12, LLC, d/b/a Fairfax Community Hospital, Case No. 19-01697 (the "Fairfax Case"); and CAH Acquisition Company #16, LLC, d/b/a Haskell County Community Hospital, Case No. 19-01227 (the "Haskell Case"), (collectively the "Debtors' Cases").

Case, the Prague Case, the Fairfax Case, and the Haskell Case.  Similar motions will be filed in all those cases.  In support of this Motion, the Trustee respectfully states as follows:

## I.    JURISDICTION AND VENUE

1.        This United States Bankruptcy Court for the Eastern District of North Carolina (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).

2.        Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.        The relief sought in this Motion is based upon Rule 9019 of the Bankruptcy Rules.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

4.        On March 21, 2019 (the "Petition Date"), Prague Community Hospital filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code before this Court.

5.        On March 29, 2019, the Court entered an Order approving the appointment of the Trustee [Dkt. No. 30].  The Trustee is the duly appointed, qualified, and acting trustee of the Debtor's estate.

6.        On September 16, 2019, the Trustee filed an adversary proceeding in this Court against CBSG, captioned Waldrep v. Complete Business Solutions Group, Inc., AP No. 19-00138 (Bankr. E.D.N.C) (the "Adversary Proceeding").

7.        On September 30, 2019, the Trustee filed a *Chapter 11 Plan of Orderly Liquidation* in each of the Debtors' Cases. On October 17, 2019, the Trustee filed an *Amended Chapter 11 Plan of Orderly Liquidation* (each a "Plan," and collectively, the "Plans") in each of the Debtors' Cases.

8.        On November 27, 2019, the Court entered its *Order (A) Establishing Bid Procedures, (B) Approving Stalking Horse Bidder, (C) Approving Form and Manner of Notices,*

*(D) Scheduling Hearing to Consider Final Approval of Sale and Treatment of Executory Contracts and Unexpired Leases, and (E) Granting Related Relief*, [Dkt. No. 253] (the "<u>Bidding Procedures Order</u>").

9.      On December 2, 2019, CBSG objected to confirmation of the plans of reorganization in the Debtors' Cases.

10.      On December 2, 2019, the Bankruptcy Administrator for the Eastern District of North Carolina filed the *Bankruptcy Administrator's Consolidated Response to Disclosure Statement and Amended Plans of Liquidation,* objecting to confirmation of the plans of reorganization in the Debtors' Cases.

11.      In accordance with the Bidding Procedures Order, the Trustee auctioned substantially all the Debtor's assets at a public auction on December 19, 2019 in Charlotte, North Carolina (the "<u>Auction</u>").

12.      On February 4, 2020, the Court entered the *Order (A) Approving the Sale Free and Clear of All Liens, Claims, Interests, and Encumbrances, (B) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* [Dkt. No. 450] (the "<u>Sale Order</u>"), which approved the sale of substantially all the Debtor's assets to Transcendental Union with Love and Spiritual Advancement ("<u>TULSA</u>") at the Auction. The sale to TULSA closed in May 2020.

13.      The Sale Order provided for a mediated settlement conference with the Nusbaum/White creditors.  The Mediation Parties selected mediator C. Edward Dobbs (the "<u>Mediator</u>") and proceeded with a global mediated settlement conference to address all claims in each of the Debtors' Cases in order to comply with the Sale Order, effectuate the confirmation of the Plan, and respond to the challenges of the COVID-19 coronavirus pandemic.

14.     After several weeks of negotiations, led by the Mediator, three of the Mediation Parties (i.e., Nusbaum/White, Cohesive, and the Trustee) agreed to a settlement.  Counsel for CBSG attempted to obtain authority the authority of CBSG to join the settlement, but that process was interrupted by the appointment of a receiver for CBSG.

15.     On July 31, 2020, the United States District Court for the Southern District of Florida (the "District Court") appointed Ryan K. Stumphauzer as the receiver for CBSG (the "Receiver") in the case of Securities and Exchange Commission v. Complete Business Solutions Group, Inc., d/b/a Par Funding, et al., Case No. 20-CIV-81205-RAR.  A true and correct copy of the order appointing the Receiver is attached hereto as Exhibit "A."

16.     The District Court gave the Receiver certain duties, including the duty to preserve the property interests of CBSG and prevent the dissipation or concealment of such interests.  In addition, the District Court stayed "[a]ll civil legal proceedings of any nature, including, but not limited to, bankruptcy proceedings, . . . or any other actions of any nature involving . . . any of the Receivership Entities' property interests . . . [and] any of the Receivership Entities . . . (the "Injunction")."  A true and correct copy of the order granting the Injunction is attached hereto as Exhibit "B."

17.     The Trustee and the Receiver have agreed that the filing of this Motion does not violate the Injunction.

18.     Because confirmation of the Trustee's plan in this case and other cases has been delayed by confirmation of the proposed settlement, because payments to creditors in this case and other cases has been delayed until confirmation, and because settlement with CBSG has been delayed by the inability of the Receiver and his counsel to investigate the proposed settlement, the

parties have agreed (a) to seek approval of the settlement and (b) give the Receiver thirty (30) days

after the date of this Motion to indicate whether CBSG will join the settlement.

## III. COMPROMISES AND SETTLEMENTS BETWEEN THE MEDIATION PARTIES

### A. The Four-Party Settlement

19.     The Mediation Parties have entered into the Mediated Settlement Agreement, (the

"Settlement Agreement"), attached hereto as Exhibit "C" and incorporated herein by reference.

20.     The Settlement Agreement outlines the estimates of available proceeds in each of

the Debtors' Cases as follows:

| | Cash on Hand (including Sale Proceeds) | Estimated AR Collections | CARES Act Funds |
|---|---|---|---|
| Oswego | $77,810.11 ($75,000) | $1,077,642 | |
| Horton | $315,513.09 ($275,000) | $724,305 | |
| Prague | $1,805,978.81 ($400,000) | $578,000 | $1,763,256.48 |
| Fairfax | $2,580,267.53 ($2,098,979.57) | $1,043,000 | $526,858.01 |
| Haskell | $268,147.40 ($200,000) | $1,575,200 | $120,511.80 |
| **TOTAL:** | **$5,047,716.94 ($3,048,979.57)** | **$4,998,147** | **$2,410,626.29** |

### A. *Trustee Claims*

21.     Collectively, the Trustee estimates that as of May 31, 2020, the accrued and unpaid

fees and expenses of the Trustee and his retained professionals in all five affected cases (i.e., the

Oswego Case, the Horton Case, the Prague Case, the Fairfax Case, and the Haskell Case) (the

"Affected Cases") total $3,187,646.00.  All the foregoing fees and expenses, together with those

incurred after the date hereof (to the extent approved by the Bankruptcy Court) are collectively

referred to as the "Trustee Related Claims."

### B.  *Cohesive Claims*

22.     Cohesive asserts claims in the Affected Cases totaling $12,752,811.54, of which $2,764,214 represents the unpaid principal balance of debtor-in-possession financing, $7,060,834.16 represents management fees, $414,182.45 represents pre-petition advances, and $750,052.51 represents post-petition advances.

23.     Cohesive asserts that interest has accrued on the unpaid principal balance of its debtor-in-possession loans, at the agreed upon rate of 5.5 percent per annum, in the amount of $65,873 in the CAH 7 Case; $90,276.35 in the CAH 12 Case; and $31,329.47 in the CAH 16 Case.

### C.  *Nusbaum/White Claim*

24.     Nusbaum/White assert a claim against the Debtors in the Affected Cases, jointly and severally, based upon the unpaid balance of the Second Amended and Restated Revolving Note, dated September 16, 2010, made by the Debtors and others to the order of Gemino (the "Gemino Note"), and now held by Nusbaum/White, totaling approximately $3,765,000 as of the various Petition Dates.

25.     Nusbaum/White contend that their claim is a secured claim to the extent of the value of the assets of each Debtor in respect of which, Nusbaum./White assert a perfected, first priority lien and is an unsecured claim against each of the Debtors to the extent of any deficiency.

### D.  *CBSG Claim*

26.     CBSG asserts claims against the Debtors in the Affected Cases, jointly and severally, totaling $6,113,514.70, without interest.

### E.  *Pre-Petition Priority Claims (wages, taxes, etc.)*

27.     Collectively in all five cases, the Trustee estimates that prepetition priority claims total $8,566,309.13.  Of this amount, the Trustee estimates that prepetition priority claims for Prague Community Hospital total $1,148,516.39.

### F.  *Allowance and Treatment of Claims*

28.     Pursuant to the proposed settlement, the claims of the Mediation Parties shall be deemed allowed as and to the extent provided in the Settlement Agreement; provided, however, that (i) each Party's proof of claim shall be deemed amended so that it is allowed only as provided herein; (ii) CBSG shall not be deemed to be the holder of a priority claim under either Section 503 or Section 507(b) of the Bankruptcy Code; (iii) Nusbaum/White shall not be deemed to be the holder of a priority claim under either Section 503 or Section 507(b) of the Bankruptcy Code except to the extent provided in Paragraph D12 of the Settlement Agreement; (iv) Cohesive shall be entitled to an administrative claim in the Prague Case, the Fairfax Case, and the Haskell Case under Section 364(c)(1) of the Bankruptcy Code for the unpaid balance of its debtor-in-possession loans in said cases and under Section 503(b) of the Bankruptcy Code in said cases for the unpaid balance of its post-petition management fees and other administrative expense claims in such case as set forth in the Settlement Agreement; (v) the Trustee and his retained professionals shall be required to file applications for allowance of their claims as and to the extent required by the Bankruptcy Code and/or orders of the Bankruptcy Court; and (vi) any and all objections that have been, or could be, filed by any Party to another Party's proof of claim or pending request for allowance of administrative expense status shall be deemed to be withdrawn by the Party making such objection or otherwise to be disallowed by the Bankruptcy Court.

29.     The amount of any Trustee Related Claims that have not been approved by the Bankruptcy Court on or before the Settlement Effective Date (as defined in the Settlement Agreement) shall be allowed only to the extent approved by the Bankruptcy Court.  Any fees and expenses incurred by the Trustee in connection with the mediation, the preparation and execution of the Settlement Agreement, the preparation and filing this Motion, and implementation of the Settlement Agreement other than in the pursuit of any Avoidance Actions (as defined in the Settlement Agreement) or Non-Avoidance Actions (as defined in the Settlement Agreement) shall constitute, to the extent such fees and expenses are approved by the Bankruptcy Court, an administrative expense claim that is subordinate in right of payment to all other allowed post-petition claims of the other Mediation Parties in each of the Debtors' cases, including any claim of Cohesive for unpaid debtor-in-possession loans or approved management fees in the Prague Case, the Fairfax Case, and the Haskell Case (the "Subordinated Trustee Related Claims").

30.     The claim of CBSG shall be allowed in the amount of $2,100,000.00, of which, (i) $1,350,000.00 shall be deemed a general unsecured claim (jointly and severally owed by the Debtors), (ii) $405,000.00 shall be deemed secured by the deed of trust on the real property of Fairfax Community Hospital, and (iii) $345,000.00 shall be deemed a compromised claim with respect to the Gemino Note.

31.     THE RECEIVER SHALL HAVE A PERIOD OF NOT MORE THAN THIRTY (30) DAYS FROM THE DATE OF THIS MOTION TO AGREE TO THE SETTLEMENT AGREEMENT. THE FAILURE OF THE RECEIVER TO TIMELY AGREE TO THE SETTLEMENT AGREEMENT WILL REQUIRE THE TRUSTEE TO EFFECT THE THREE-PARTY SETTLEMENT (DEFINED BELOW).

32.     The claims of Cohesive shall be deemed allowed as follows in the Prague Case, the Fairfax Case, and the Haskell Case:

| | Prague | Fairfax | Haskell | Total |
|---|---|---|---|---|
| **Administrative (364(c)(1)) (interest calculated through 9/22/20)** | | | | |
| DIP Financing | 954,218.18 | 1,448,131.06 | 549,344.56 | **2,951,693.80** |
| **Administrative (503(b))** | | | | |
| Management Fee | 2,219,959.16 | 2,115,875.00 | 2,725,000.00 | 7,060,834.16 |
| Payroll and Benefits | 88,064.41 | 491,226.57 | 393,309.30 | 972,600.28 |
| Staffing Solutions | 170,384.09 | 181,322.43 | 24,157.27 | 375,863.79 |
| Post-Petition Advances | 271,000.00 | 78,896.71 | 400,155.80 | 750,052.51 |
| | | | | **9,159,350.74** |
| **General Unsecured** | | | | |
| RevOps | 66,306.01 | 143,148.57 | 78,822.69 | 288,277.27 |
| Expenses Paid Directly | 9,627.00 | 52,758.48 | 59,225.19 | 121,610.67 |
| MediRyde | - | 3,586.25 | 1,589.50 | 5,175.75 |
| Pre-Petition Advances | 201,735.35 | - | 212,447.10 | 414,182.45 |
| | | | | **829,246.14** |

33.     On the Settlement Effective Date, the Trustee, on behalf of the bankruptcy estate, and the other Mediation Parties shall be deemed to have waived any right of surcharge under

Section 506(c) of the Bankruptcy Code as against any other Party or in respect of such other Party's collateral security.

34.    The treatment of the claims of the Mediation Parties are outlined and set forth in detail according to each of the Debtors' Cases in the Settlement Agreement attached hereto. Additionally, the Trustee shall be responsible for making all distributions as outlined in the attached Settlement Agreement and pursuant to the Settlement Agreement, unless otherwise provided in a confirmed Plan or order of this Court.

### G.  *Dismissal of Adversary Proceeding*

35.    Promptly upon the Settlement Effective Date, the Trustee along with CBSG will file a stipulation of dismissal in the Adversary Proceeding with each Party dismissing its claims with prejudice and, with each Party to the Adversary Proceeding to bear such Party's own costs.

### F.  *Plan Confirmation/Conversion of Cases*

36.    At the election of the Parties, and as set forth in the Settlement Agreement, the Parties will determine whether the terms of the Settlement Agreement are to be incorporated into the Plan; provided however, the terms of the Settlement Agreement shall be enforceable despite any failure to confirm a Plan.

37.    If the Trustee files a motion for conversion of any of the Debtors' Chapter 11 cases to cases under Chapter 7, the Settlement Agreement, if approved, will be enforceable in any Chapter 7 Case and binding on any Chapter 7 Trustee.

### B.  The Three-Party Settlement

38.    If the Receiver does not choose to join the Four-Party Settlement, then the Trustee, Nusbaum/White, and Cohesive seek the approval of the Court to effect the Three-Party

Settlement, which modifies the Four-Party Settlement in the following ways (as more particularly described in the Settlement Agreement):

  a.  The claim of CBSG shall not be deemed to be allowed.

  b.  CBSG shall not be released, nor shall it be required to release any party.

  d.  The Trustee shall not dismiss the Adversary Proceeding.  Therefore, the Trustee shall escrow $645,000 pending the outcome of the Adversary Proceeding and/or some other resolution of the claims of CBSG.

### IV. <u>BASIS FOR RELIEF REQUESTED</u>

  39.  Therefore, the Trustee seeks approval of the proposed compromises and settlements with the Mediation Parties as outlined in paragraphs 15 through 38 above and as set forth more fully in the Settlement Agreement attached hereto as Exhibit "C" and incorporated herein by reference.

  40.  Bankruptcy Rule 9019(a) provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. Pro. 9019(a). Before approving a settlement under Bankruptcy Rule 9019, a court must determine that the proposed settlement is in the best interests of the debtor's estate. *St. Paul Fire & Marine Ins. Co. v. Vaughn*, 779 F.2d 1003, 1010 (4th Cir. 1985) (upholding bankruptcy court's approval of settlement because it was "in the best interests of the estate as a whole")

  41.  Additionally, the settlement must be fair and equitable as well as reasonable. *In re Brantley*, No. 13-00483-8-DMW, 2015 WL 230186, at *2 (Bankr. E.D.N.C. Jan. 15, 2015) (citing *Maloy v. Sigmon (In re Maloy),* 2009 Bankr. LEXIS 4010, at *11 (Bankr. W.D.N.C. Dec. 7, 2009) (citations omitted). "In determining the reasonableness of a settlement, a bankruptcy judge must

decide only whether the settlement falls between the lowest and highest points in the range of reasonableness." *Id.* (quoting *Barrett v. Andre Chreky, Inc. (In re Andre Chreky, Inc.),* 448 B.R. 596, 609 (D.D.C.2011) (internal quotation marks omitted).

42.     Pursuant to Rule 9019(b) of the Bankruptcy Rules, "the Court may fix a class or classes of controversies and authorize the trustee to compromise or settle controversies within such class or classes without further notice or hearing."  Fed. R. Bankr. Pro. 9019(b).

43.     The Trustee believes that the proposed settlements are fair and equitable, in the best interest of the estate of the Prague Case and its creditors, as well as the other Debtors' estates, and that the settlements avoid the significant costs, expenses, and time involved in further litigation of the claims and objections of the Mediation Parties.  The issues surrounding the objections, claims, fees, expenses, and distributions in each of the Debtors' cases are complex and litigation is unlikely to create a better result for the Debtors' estates, especially given that the sale has closed to TULSA.

**WHEREFORE**, for the reasons expressed herein, the Trustee respectfully requests that the Court enter an Order:

1.     Approving the Trustee's proposed compromises and settlements with the Mediation Parties as evidenced by the Settlement Agreement;

2.     Authorizing the Trustee, along with Cohesive, CBSG, and Nusbaum/White, to take all actions necessary to implement the terms of the settlements; and

3.     Granting such other and further relief as the Court deems necessary and proper.

12

Respectfully submitted, this the 17th day of September, 2020.

**WALDREP LLP**

/s/ *Jennifer B. Lyday*
Thomas W. Waldrep, Jr. (NC State Bar No. 11135)
James C. Lanik (NC State Bar No. 30454)
Jennifer B. Lyday (NC Bar No. 39871)
101 S. Stratford Road, Suite 210
Winston-Salem, NC 27104
Telephone: 336-717-1440
Telefax: 336-717-1340
Email: notice@waldrepllp.com

**- and –**

**HENDREN, REDWINE & MALONE, PLLC**

Jason L. Hendren (NC State Bar No. 26869)
Rebecca F. Redwine (NC Bar No. 37012)
4600 Marriott Drive, Suite 150
Raleigh, NC 27612
Telephone: 919-420-7867
Telefax: 919-420-0475
Email: jhendren@hendrenmalone.com
          rredwine@hendrenmalone.com

*Attorneys for the Trustee*

# EXHIBIT A

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 20-CIV-81205-RAR

**SECURITIES AND EXCHANGE COMMISSION,**

Plaintiff,

v.

**COMPLETE BUSINESS SOLUTIONS GROUP,
INC. d/b/a/ PAR FUNDING,
FULL SPECTRUM PROCESSING, INC.,
ABETTERFINANCIALPLAN.COM LLC
d/b/a/ A BETTER FINANCIAL PLAN,
ABFP MANAGEMENT COMPANY, LLC
f/k/a/ PILLAR LIFE SETTLEMENT
MANAGEMENT COMPANY, LLC,
ABFP INCOME FUND, LLC,
ABFP INCOME FUND 2, L.P.,
UNITED FIDELIS GROUP CORP.,
FIDELIS FINANCIAL PLANNING LLC,
RETIREMENT EVOLUTION GROUP, LLC,
RETIREMENT EVOLUTION INCOME
FUND, LLC f/k/a RE INCOME FUND, LLC,
RE INCOME FUND 2, LLC,
LISA MCELHONE,
JOSEPH COLE BARLETA a/k/a/ JOE COLE,
JOSEPH W. LAFORTE a/k/a JOE MACK
a/k/a/ JOE MACKI a/k/a JOE MCELHONE,
PERRY S. ABBONIZIO,
DEAN J. VAGNOZZI,
MICHAEL C. FURMAN,
and JOHN GISSAS,**

Defendants, and

**L.M.E. 2017 FAMILY TRUST,**

Relief Defendant.

_____/

## ORDER GRANTING PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S
## MOTION FOR APPOINTMENT OF RECEIVER

**THIS CAUSE** comes before the Court upon Plaintiff Securities and Exchange Commission's *Ex Parte* Motion for the Appointment of a Receiver [ECF No. 4] ("Motion"), filed on July 24, 2020. In the Motion, Plaintiff seeks the appointment of a Receiver over the corporate Defendants in this case: Complete Business Solutions Group, Inc. d/b/a Par Funding ("Par Funding"), Full Spectrum Processing, Inc., ABetterFinancialPlan.com LLC d/b/a A Better Financial Plan ("ABFP"), ABFP Management Company, LLC f/k/a Pillar Life Settlement Management Company, LLC ("ABFP Management"), ABFP Income Fund, LLC, ABFP Income Fund 2, L.P., United Fidelis Group Corp., Fidelis Financial Planning LLC, Retirement Evolution Group, LLC, RE Income Fund LLC, and RE Income Fund 2 LLC (collectively, the "Receivership Entities").

Plaintiff seeks a Receiver with full and exclusive power, duty, and authority to: administer and manage the Receivership Entities' business affairs, funds, assets, causes of action, and any other property; marshal and safeguard all of the assets of the Receivership Entities; and take whatever actions are necessary for the protection of the investors. *See* Motion at 2. Plaintiff has made a sufficient and proper showing in support of the relief requested, submitted the credentials of a candidate to be appointed as Receiver, and advised the Court that this candidate is prepared to assume this responsibility if so ordered by the Court. Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Plaintiff Securities and Exchange Commission's *Ex Parte* Motion for the Appointment of a Receiver [ECF No. 4] is **GRANTED**. Ryan K. Stumphauzer is appointed Receiver over the Receivership Entities, their subsidiaries, successors, and assigns. If the Court grants Plaintiff's Emergency *Ex Parte* Motion for Temporary Restraining

Order and Other Relief [ECF No. 14], Mr. Stumphauzer is authorized, empowered, and directed as follows until further Order of the Court:

1.     To take custody, control, and possession of all Receivership Entity records, documents, and materials, and to safeguard these items until further Order of the Court;

2.     To secure and safeguard the Receivership Entity's information technology, data, documents, storage systems, and documents, including by making contact with any third party vendors, such as movers and information technology personnel, to assist in this process;

3.     To engage and employ persons in his discretion to assist him in carrying out his duties and responsibilities hereunder, including, but not limited to, accountants, lawyers, and paralegals ("Retained Personnel");

4.     To take any other action as necessary and appropriate for the preservation of the Receivership Entities' property interests or to prevent the dissipation or concealment of such property interests; and

5.     To take such other action as may be approved by this Court.

6.     Additionally, the Receiver shall promptly give notice of his appointment to all known officers, directors, agents, employees, shareholders, creditors, debtors, managers, and general and limited partners of each Receivership Entity, as the Receiver deems necessary or advisable to effectuate the operation of the receivership.

7.     In furtherance of his responsibilities in this matter, the Receiver is authorized to communicate with, and/or serve this Order upon, any person, entity or government office that he deems appropriate to inform them of the status of this matter and the Receiver's appointment.

8.     The Receiver and Retained Personnel are entitled to reasonable compensation and expense reimbursement from the Receivership Estates.   The Receiver shall seek the Court's

approval by filing a Motion for the reimbursement of expenses and compensation for time spent on the matters set forth herein.

9.      The Receivership Entities and all persons receiving notice of this Order shall not hinder or interfere with the Receiver's efforts to take control or possession of the Receivership Entities' property interests identified above, or hinder his efforts to preserve them.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 27th day of July, 2020.

**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**

Copies to:      Amie Riggle Berlin, Esq.
                Senior Trial Counsel
                Securities and Exchange Commission
                801 Brickell Avenue, Suite 1800
                Miami, Florida 33131
                Facsimile: (305) 536-4154
                Email: berlina@sec.gov
                *Counsel for Plaintiff*

# **EXHIBIT B**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 20-CIV-81205-RAR

**SECURITIES AND EXCHANGE
COMMISSION,**

      Plaintiff,

v.

**COMPLETE BUSINESS SOLUTIONS
GROUP, INC. d/b/a PAR FUNDING**, *et al.,*

      Defendants.

_____/

### ORDER GRANTING PLAINTIFF'S URGENT MOTION TO AMEND ORDER APPOINTING RECEIVER TO INCLUDE LITIGATION INJUNCTION

**THIS CAUSE** comes before the Court upon Plaintiff Securities and Exchange Commission's ("Commission") Urgent Motion to Amend Order Appointing Receiver to Include Litigation Injunction [ECF No. 48] ("Motion"), filed on July 31, 2020. In the Motion, Plaintiff seeks to amend the Court's Order Granting Plaintiff Securities and Exchange Commission's Motion for Appointment of Receiver [ECF No. 36] ("Order Appointing Receiver"), entered on July 27, 2020.

Specifically, Plaintiff seeks to amend the Order Appointing Receiver to include a litigation injunction in all cases and proceedings to which the following entities are a party: Complete Business Solutions Group, Inc. d/b/a Par Funding ("Par Funding"), Full Spectrum Processing, Inc., ABetterFinancialPlan.com LLC d/b/a A Better Financial Plan ("ABFP"), ABFP Management Company, LLC f/k/a Pillar Life Settlement Management Company, LLC ("ABFP Management"), ABFP Income Fund, LLC, ABFP Income Fund 2, L.P., United Fidelis Group Corp., Fidelis Financial Planning LLC, Retirement Evolution Group, LLC, RE Income Fund LLC, and RE

Income Fund 2 LLC (collectively, the "Receivership Entities").  The Receiver agrees with and joins in the request for this relief.  For the reasons set forth in the Motion, it is hereby

**ORDERED AND ADJUDGED** that Plaintiff Securities and Exchange Commission's Motion to Amend Order Appointing Receiver to Include Litigation Injunction [ECF No. 48] is **GRANTED**.

The Receiver, Ryan Stumphauzer, is authorized, empowered, and directed as follows until further Order of the Court:

1.    To take custody, control, and possession of all Receivership Entity records, documents, and materials, and to safeguard these items until further Order of the Court;

2.    To secure and safeguard the Receivership Entities' information technology, data, documents, storage systems, and documents, including by making contact with any third-party vendors, such as movers and information technology personnel, to assist in this process;

3.    To engage and employ persons in his discretion to assist him in carrying out his duties and responsibilities hereunder, including, but not limited to, accountants, lawyers, and paralegals ("Retained Personnel");

4.    To take any other action as necessary and appropriate for the preservation of the Receivership Entities' property interests or to prevent the dissipation or concealment of such property interests; and

5.    To take such other action as may be approved by this Court.

6.    Additionally, the Receiver shall promptly give notice of his appointment to all known officers, directors, agents, employees, shareholders, creditors, debtors, managers, and general and limited partners of each Receivership Entity, as the Receiver deems necessary or advisable to effectuate the operation of the receivership.

7.    In furtherance of his responsibilities in this matter, the Receiver is authorized to communicate with, and/or serve this Order upon, any person, entity or government office that he deems appropriate to inform them of the status of this matter and the Receiver's appointment.

8.    The Receiver and Retained Personnel are entitled to reasonable compensation and expense reimbursement from the Receivership Entities' estates.  The Receiver shall seek the Court's approval by filing a Motion for the reimbursement of expenses and compensation for time spent on the matters set forth herein.

9.    The Receivership Entities and all persons receiving notice of this Order shall not hinder or interfere with the Receiver's efforts to take control or possession of the Receivership Entities' property interests identified above or hinder his efforts to preserve them.

## STAY OF LITIGATION

"[W]hile it should be sparsely exercised, district courts possess the authority and discretion to enter anti-litigation orders" in the context of a Securities and Exchange Commission receivership. *Sec. & Exch. Comm'n v. Byers*, 609 F.3d 87, 89 (2d Cir. 2010); *see also Sec. & Exch. Comm'n v. Onix Capital, LLC*, No. 16-24678-CIV, 2017 WL 6728814, at *4 (S.D. Fla. Jul. 24, 2017) ("That the receivership is not 'substantially underway' is not a compelling factor to lift a stay against litigation when balanced against the Receiver's interest in preventing ancillary litigation during the early stages of the receivership."); *Liberte Capital Grp., LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006) ("[T]he receivership court may issue a blanket injunction, staying litigation against the named receiver and the entities under his control unless leave of that court is first obtained.").

As set forth below, the following proceedings—excluding the instant proceeding—and all law enforcement, police, or regulatory actions and actions of the Commission related to the above-captioned enforcement action, are hereby stayed until further Order of this Court:

> All civil legal proceedings of any nature, including, but not limited to, bankruptcy proceedings, arbitration proceedings, foreclosure actions, default proceedings, or any other actions of any nature involving: (a) the Receiver, in his capacity as Receiver; (b) any of the Receivership Entities' property interests, wherever located; (c) any of the Receivership Entities, including subsidiaries and partnerships; or, (d) any of a Receivership Entity's past or present officers, directors, managers, agents, or general or limited partners sued for, or in connection with, any action taken by them while acting in such capacity of any nature, whether as plaintiff, defendant, third-party plaintiff, third-party defendant, or otherwise (such proceedings are hereinafter referred to as "Ancillary Proceedings").

The parties to any and all Ancillary Proceedings are enjoined from commencing or continuing any such legal proceeding, or from taking any action, in connection with any such proceeding, including, but not limited to, the issuance or employment of process.

All Ancillary Proceedings are stayed in their entirety, and all Courts having any jurisdiction thereof are enjoined from taking or permitting any action until further Order of this Court.  Further, as to a cause of action accrued or accruing in favor of one or more of the Receivership Entities against a third person or party, any applicable statute of limitation is tolled during the period in which this injunction against commencement of legal proceedings is in effect as to that cause of action.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 31st day of July, 2020.

**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**

Copies to: Counsel of Record

# **EXHIBIT C**

## MEDIATED SETTLEMENT AGREEMENT

This Settlement Agreement is entered in to as of August 14, 2020, by and between the Parties (as that capitalized term is defined below).  The Parties hereby agree as follows:

**Defined Terms:**

| | | |
|---|---|---|
| Approval Order | -- | An order of the Bankruptcy Court granting a motion of the Trustee in each Case pursuant to Bankruptcy Rule 9019 for approval of the Settlement Agreement. |
| Bankruptcy Court | -- | The United States Bankruptcy Court for the Eastern District of North Carolina, Greenville Division. |
| Case | -- | With respect to each Debtor, such Debtor's Chapter 11 Case or, in the event that such Chapter 11 Case is converted to Chapter 7, such Chapter 7 Case. |
| CBSG | -- | Complete Business Solutions Group, Inc. |
| CBSG Note Share | -- | As defined in Paragraph D1(d). |
| Cohesive | -- | Cohesive Healthcare Management and Consulting, LLC. |
| Debtors | -- | Oswego (#2), Horton (#3), Prague (#7), Fairfax (#12), and Haskell (#16). |
| Gemino | -- | Gemino Healthcare Finance, LLC. |
| Gemino Note | -- | The Second Amended and Restated Revolving Note dated September 16, 2010, made by the Debtors and others to the order of Gemino, jointly and severally, and now held by N/W. |
| HAC | -- | Health Acquisition Company, LLC. |
| N/W | -- | Paul L. Nusbaum and Steven F. White, jointly and severally. |
| N/W Subordinated Distribution | -- | As defined in Paragraph D4(c). |
| Parties | -- | Trustee, N/W, Cohesive, and CBSG. |
| Petition Date | -- | With respect to each Debtor, the date on which such Debtor filed a petition with the Bankruptcy Court for relief under Chapter 11 of the Bankruptcy Code. |

| Plan | -- | A plan of reorganization or liquidation filed by the Trustee in each Debtor's Chapter 11 Case (as the same may be amended to incorporate the terms of the Settlement Agreement). |
| Settlement Agreement | -- | This Agreement. |
| Settlement Effective Date | -- | As defined in Paragraph E4. |
| Trustee | -- | Thomas W. Waldrep, Jr., trustee in each of the pending Chapter 11 Cases or, if any Chapter 11 Case is converted to Chapter 7, the duly appointed and acting trustee in such Chapter 7 Case. |

**Introduction**

After several weeks of negotiations, led by Mediator C. Edward Dobbs, three of the Parties (i.e., Nusbaum/White, Cohesive, and the Trustee) agreed to the following settlement (the "Four-Party Settlement"). Counsel for CBSG attempted to obtain authority the authority of CBSG to join the Four Party Settlement, but that process was interrupted by the appointment of a receiver for CBSG.

On July 31, 2020, the United States District Court for the Southern District of Florida appointed Ryan K. Stumphauzer as the receiver for CBSG (the "Receiver") in the case of Securities and Exchange Commission v. Complete Business Solutions Group, Inc., d/b/a Par Funding, et al., Case No. 20-CIV-81205-RAR.

If the Receiver elects to join the Four Party Settlement, then the treatment of the Parties is described below. If the Receiver elects to reject the Four Party Settlement, then such settlement will be modified as stated in Paragraph G below titled "Modifications if CBSG Receiver Rejects Four Party Settlement."

**A. Trustee's Estimate of Available Proceeds**

The Trustee estimates available proceeds in each of the Debtor's estates to be approximately as follows:

| | Cash on Hand (including Sale Proceeds) | Estimated AR Collections | CARES Act Funds |
|---|---|---|---|
| Oswego | $77,810.11 ($75,000) | $1,077,642 | |
| Horton | $315,513.09 ($275,000) | $724,305 | |
| Prague | $1,805,978.81 ($400,000) | $578,000 | $1,508,670.62* |

| Fairfax | $2,580,267.53<br>($2,098,979.57) | $1,043,000 | $526,858.01* |
| Haskell | $268,147.40<br>($200,000) | $1,575,200 | $120,511.80* |
| **TOTAL:** | **$5,047,716.94**<br>**($3,048,979.57)** | **$4,998,147** | **$2,156,040.43** |

* = as of May 19, 2020 -- The disposition of the CARES Act monies is the subject of ongoing litigation/settlement negotiations. The Trustee has sought Bankruptcy Court permission to make available to the Parties and other creditors the unused CARES Act funds in the amounts shown above. At this point in time, the Trustee believes that there is a likelihood that the CARES Act funds in the Fairfax, Prague, and Haskell Cases will be available for use in accordance with this Settlement Term Sheet (subject to Bankruptcy Court approval) in the approximate amounts set forth above.

**B.  Claims of Parties**

1.  Estimated Trustee Related Claims:

The Trustee has estimated that, as of May 31, 2020, accrued and unpaid fees and expenses of the Trustee and his retained professionals are as follows, by Case:

- Oswego – $340,866

- Horton – $426,206

- Prague – $723,879

- Fairfax – $845,684

- Haskell – $861,011

    **TOTAL: $3,187,646**

All the foregoing fees and expenses, together with those incurred after the date hereof (to the extent approved by the Bankruptcy Court) are collectively referred to as the "Trustee Related Claims."

2.  Cohesive Claims:

(a)     Cohesive asserts claims totaling $12,752,811.54, of which $2,764,214 represents the unpaid principal balance of DIP financing, $7,060,834.16 represents management fees, $414,182.45 represents pre-petition advances, and $750,052.51 represents post-petition advances, in part broken down as follows:

3

- Prague – $3,915,420.88 (of which $888,344.86 is asserted to be the unpaid principal balance of DIP financing, $201,735.35 is asserted to be pre-petition advances, and $2,219,959.16 is asserted to be management fees)

- Haskell – $4,412,721.94 (of which $518,015 is asserted to be the unpaid principal balance of DIP financing, $212,447.10 is asserted to be pre-petition advances, and $2,725,000 is asserted to be management fees)

- Fairfax – $4,424,668.72 (of which $1,357,854 is asserted to be the unpaid principal balance of DIP financing, $0 is asserted to be pre-petition advances, and $2,115,875 is asserted to be management fees)

(b)    Cohesive contends that interest has accrued on the unpaid principal balance of its DIP loans, at the agreed upon rate of 5.5% per annum, in the amount of $65,873.32 in the Prague Chapter 11 Case; $31,329.47 in the Haskell Chapter 11 Case; and $90,276.35 in the Fairfax Chapter 11 Case.

3.    Nusbaum/White Claim:

Nusbaum and White ("N/W") assert a claim against all of the Debtors, jointly and severally, based upon the unpaid balance of the Gemino Note, totaling $3,764,938 as of the applicable Petition Date for each Debtor, which N/W contend is a secured claim to the extent of the value of the assets of each Debtor in respect of which N/W assert a perfected, first priority lien and is an unsecured claim against each of the Debtors to the extent of any deficiency.

4.    CBSG Claim:

CBSG asserts claims against the Debtors, jointly and severally, totaling $6,113,514.70, without interest.

Note: The CBSG proofs of claim do not appear to make any allocation of advances as among HAC and any of the Debtor subsidiaries.

5.    Pre-Petition Priority Claims (wages, taxes, etc.):

The Trustee estimates pre-petition priority claims to be as follows, by Case:

- Oswego  -  $1,989,040.07
- Horton   -  $2,693,378.14
- Prague   -  $1,148,516.39
- Fairfax   -  $1,364,576.26
- Haskell   -  $1,370,798.27

## C. Claim Allowance

1.  Deemed Allowance of Party Claims:

    (a)    The claims of the Parties shall be deemed allowed as and to the extent hereinafter provided in this Settlement Term Sheet, without defense, setoff, recoupment, recharacterization, subordination (except as provided herein), marshaling, surcharge rights, avoidance, or any other challenge to any such claim of any nature (whether such challenge is brought by motion, claim objection, adversary proceeding, contested matter, or otherwise), and without the necessity of any amendment, modification, withdrawal or refiling of any proof of claim in any of the Cases and without post-petition interest (except for the principal balance of Cohesive's DIP loans); provided, however, that (i) each Party's proof of claim shall be deemed amended so that it is allowed only as provided herein; (ii) CBSG shall not be deemed to be the holder of a priority claim under either Section 503 or Section 507(b) of the Bankruptcy Code; (iii) N/W shall not be deemed to be the holder of a priority claim under either Section 503 or Section 507(b) of the Bankruptcy Code except to the extent provided in Paragraph D12 hereof; (iv) Cohesive shall be entitled to an administrative claim in the Prague, Haskell, and Fairfax Cases under Section 364(c)(1) of the Bankruptcy Code for the unpaid balance of its DIP loans in such Case and under Section 503(b) of the Bankruptcy Code in each of those Cases for the unpaid balance of its post-petition management fees and other administrative expense claims in such Case as hereinafter set forth; (v) the Trustee and his retained professionals shall be required to file applications for allowance of their claims as and to the extent required by the Bankruptcy Code and/or orders of the Bankruptcy Court; and (vi) any and all objections that have been, or could be, filed by any Party to another Party's proof of claim or pending request for allowance of administrative expense status shall be deemed to be withdrawn by the Party making such objection or otherwise to be disallowed by the Bankruptcy Court.

    (b)    The amount of any Trustee Related Claims that have not been approved by the Bankruptcy Court on or before the Settlement Effective Date (as defined below) shall be allowed only to the extent approved by the Bankruptcy Court. Any fees and expenses incurred by the Chapter 11 Trustee in connection with the mediation among the Parties, the preparation and execution of the Settlement Agreement, the preparation and filing of a 9019 Motion in each Case for approval of the Settlement Agreement, and implementation of the Settlement Agreement other than in the pursuit of any Avoidance Actions (as hereinafter defined) or Non-Avoidance Actions (as hereinafter defined) shall constitute, to the extent such fees and expenses are approved by the Bankruptcy Court, an administrative expense claim that is subordinate in right of payment to all other allowed post-petition claims of the other Parties in each Chapter 11 Case, including any claim of Cohesive for unpaid DIP loans or approved management fees in the Prague, Fairfax, and Haskell Cases (the "Subordinated Trustee Related Claims").

    (c)    N/W's claim shall be allowed in the amount of approximately $3,764,938 in each Case, with the exact amount in each Case varying based upon the applicable Petition Date for the Debtor in such Case, all as reflected in the filed proofs of claim in each of the Cases; and the claim in each such Case shall be a secured claim to the extent of the

distributions to be made pursuant to subparagraphs 1 through 5 of Paragraph D and under subparagraph 3 of Paragraph E, an administrative expense claim to the extent provided in subparagraph 12 of Paragraph D, and a general unsecured claim to the extent of any remaining balance.

(d)     CBSG's claim shall be allowed in the amount of $2,100,000, of which (i) $1,350,000 shall be deemed a general unsecured claim (jointly and severally owed by each Debtor), (ii) $405,000 shall be deemed secured by the deed of trust on the Fairfax real estate (purchaser allocated approximately $645,000 to the real estate), and (iii) $345,000 shall be deemed a compromised claim with respect to distributions on account of the Gemino Note (the "CBSG Note Share").

(e)     The claims of Cohesive shall be deemed allowed as follows in each of the Prague, Haskell, and Fairfax Cases:

| | | Prague | Fairfax | Haskell | Total |
|---|---|---|---|---|---|
| **Administrative (364(c)(1)) (interest calculated through 9/22/20)** | | | | | |
| DIP Financing | | 954,218.18 | 1,448,131.06 | 549,344.56 | **2,951,693.80** |
| **Administrative (503(b))** | | | | | |
| Management Fee | | 2,219,959.16 | 2,115,875.00 | 2,725,000.00 | 7,060,834.16 |
| Payroll and Benefits | | 88,064.41 | 491,226.57 | 393,309.30 | 972,600.28 |
| Staffing Solutions | | 170,384.09 | 181,322.43 | 24,157.27 | 375,863.79 |
| Post-Petition Advances | | 271,000.00 | 78,896.71 | 400,155.80 | 750,052.51 |
| | | | | | **9,159,350.74** |
| **General Unsecured** | | | | | |
| RevOps | | 66,306.01 | 143,148.57 | 78,822.69 | 288,277.27 |

6

| Expenses Paid Directly | | 9,627.00 | | 52,758.48 | | 59,225.19 | | 121,610.67 |
|---|---|---|---|---|---|---|---|---|
| MediRyde | | - | | 3,586.25 | | 1,589.50 | | 5,175.75 |
| Pre-Petition Advances | | 201,735.35 | | - | | 212,447.10 | | 414,182.45 |
| | | | | | | | | **829,246.14** |

(f)     Effective on the Settlement Effective Date (as defined below), the Trustee, on behalf of the bankruptcy estate, and the other Parties shall be deemed to have waived any right of surcharge under Section 506(c) of the Bankruptcy Code as against any other Party or in respect of such other Party's collateral security.

2.   <u>No Effect on Other Claims</u>:

Unless the terms of the Settlement Agreement are incorporated into a Plan that is confirmed by the Bankruptcy Court, in no event shall the terms contained in the Settlement Agreement (including, without limitation, the treatment of the claims of the Parties as set forth therein) adversely affect the right of any other interested party to (a) assert a claim in any of the Cases, whether as a secured claim, general unsecured claim, priority claim, or administrative claim; or (b) assert any lien or claim priority with respect to such interested party's claim.

**D.   <u>Treatment of Party Claims</u>**

1.   <u>In Oswego Case</u>

Assume that estimated AR Collections of $1,077,642 are fully collected and, combined with cash on hand, result in monies available for distribution of approximately $1,155,400.

(a)     <u>Trustee Related Claims</u> – Trustee Related Claims of approximately $341,000 will be capped, solely for purposes of this distribution, at $300,000 and be paid from any available proceeds in the Oswego Case.

(b)     <u>Cohesive Claim</u> – No distribution.

(c)     <u>N/W Claim</u> – 65% of available balance (*i.e.*, after payment of capped Trustee Related Claims), or $556,010

(d)     <u>CBSG Claim</u> – From the balance of monies available for distribution in the Oswego Case, CBSG would be entitled to receive 35%, or $299,390.

2.  <u>In Horton Case</u>

Assume that estimated AR Collections of $724,305 are fully collected and, combined with cash on hand, result in monies available for distribution of approximately $1,039,818.

(a)   <u>Trustee Related Claims</u> – Trustee Related Claims of approximately $426,206 will be capped, solely for purposes of this distribution, at $400,000 and be paid from any available proceeds in the Horton Case.

(b)   <u>Cohesive Claim</u> – No distribution.

(c)   <u>CBSG Claim</u> – $45,610, which is an amount equal to the CBSG Note Share <u>minus</u> the anticipated distribution to CBSG in the Oswego Case of $299,390.

(d)   <u>N/W Claim</u> – $594,208, which is the balance of $639,818 available for distribution <u>minus</u> the amount distributed to CBSG ($45,610).

3.  <u>In Prague Case</u>

Assume that estimated AR Collections of $578,000 are fully collected and, combined with cash on hand, result in monies available for distribution of approximately $2,384,000.

(a)   <u>Trustee Related Claims</u> – Trustee Related Claims of approximately $723,879 will be capped, solely for purposes of this distribution, at $700,000 and be paid from any available proceeds in the Prague Case.

(b)   <u>N/W Claim</u> – $400,000 (sale proceeds) <u>plus</u> $500,000 (pre-petition accounts receivable/adequate protection lien), subject to a 35% sharing if and to the extent that CBSG has not been paid the full amount of the CBSG Note Share ($345,000) in aggregate from all of the Cases (without including the $405,000 distribution on account of the Fairfax deed of trust claim).

(c)   <u>Cohesive Claim</u> – $784,000 (on account of principal balance of DIP loan)

(d)   <u>CBSG Claim</u> – No distribution (unless and to the extent that aggregate distributions from all other Cases are inadequate to pay CBSG the full amount of the CBSG Note Share ($345,000), without taking into account the $405,000 distribution to be made to CBSG on account of the Fairfax deed of trust claim).

4.  <u>In Fairfax Case</u>

Assume that estimated AR Collections of $1,043,000 are fully collected and, combined with cash on hand, result in monies available for distribution of approximately $3,623,267.

(a)  Trustee Related Claims – Trustee Related Claims of approximately $845,684 will be capped, solely for purposes of this distribution, at $800,000 and be paid from any available proceeds in the Fairfax Case.

(b)  CBSG Claim – $405,000 on account of deed of trust claim. No other distribution (unless and to the extent that aggregate distributions from all other Cases are inadequate to pay CBSG the full amount of the CBSG Note Share ($345,000), without taking into account the $405,000 distribution to be made to CBSG on account of the Fairfax deed of trust claim).

(c)  N/W Claim – $1,200,000 (from available sale proceeds of $1,693,979 remaining after deducting $405,000 for the CBSG deed of trust claim) plus an amount equal to (i) $1 million (from accounts receivable collections) minus (ii) $350,000 from such available sale proceeds, to be remitted to Cohesive in satisfaction of all claim objections Cohesive may have to N/W's claim and Cohesive's asserted marshaling argument (the "N/W Subordinated Distribution"), for a total distribution to N/W from such available sale proceeds of $1,850,000. The N/W Subordinated Distribution shall not operate to reduce N/W's claim as otherwise allowed in this Settlement Term Sheet.

(d)  Cohesive Claim – $493,979 (balance of sale proceeds) plus $524,288 (balance of receivable collections) plus the N/W Subordinated Distribution ($350,000).

5.  In Haskell Case

Assume that estimated AR Collections of $1,575,200 are fully collected and, combined with cash on hand, result in monies available for distribution of approximately $1,843,347.

(a)  Trustee Related Claims – Trustee Related Claims of approximately $861,011 will be capped, solely for purposes of this distribution, at $830,000 and be paid from any available proceeds in the Haskell Case.

(b)  CBSG Claim – No distribution (unless and to the extent that aggregate distributions from all other Cases are inadequate to pay CBSG the full amount of the CBSG Note Share ($345,000), without taking into account the $405,000 distribution to be made to CBSG on account of the Fairfax deed of trust claim).

(c)  Cohesive Claim – $1,013,347 (subject to clause (d) below).

(d)  N/W Claim – No distribution unless and to the extent that aggregate distributions to N/W and CBSG on account of the Gemino Note (and, for purposes hereof, the N/W Subordinated Distribution in the Fairfax Case shall not be deemed to be a distribution on account of the Gemino Note) do not total at least the aggregate amount provided for in subparagraphs 1-4 of this Paragraph D, in which event N/W shall be entitled to receive the amount of the difference from funds that would otherwise be available to Cohesive under clause (c) above.

9

6. CARES Act Fund Distributions

If and to the extent that the Bankruptcy Court authorizes the Trustee in the Prague, Fairfax, and/or Haskell Cases to use all or any part of the CARES Act funds on hand, the Trustee shall use (a) 35% of such funds in each Case to pay allowed Trustee Related Claims (other than Subordinated Trustee Related Claims) in such Case; and (b) 65% of such funds in each Case (i) first to pay any unpaid principal balance of DIP loans owed to Cohesive in such Case together with accrued and unpaid interest thereon and owed by the Debtor in such Case as and to the extent shown in Paragraph B2(b), and (ii) thereafter to pay all other administrative expense claims in such Case (including any Trustee Related Claims, administrative expense claims owed to Cohesive, and any administrative claim of N/W, in each instance in an amount, by Case, shown in Paragraph B1 (in the case of the Trustee Related Claims), Paragraph C1(d) (in the case of Cohesive), and Paragraph D12 (in the case of N/W)), on a ratable basis to the holders of such claims.

7. Distribution of Post-October 2019 Cost Report Receivable Collections

The proceeds of cost report receivables that are to be billed, collected and turned over to the Trustee by the purchaser of assets in each Case shall be remitted to Cohesive to the extent that such cost report receivables relate to Prague, Fairfax or Haskell, for application to any unpaid administrative expense claim of Cohesive in such Case; and any collections allocable to cost report receivables of Oswego or Horton shall be distributed pro rata to the holders of unpaid administrative claims in those Cases. The Trustee and Cohesive shall diligently and in good faith cooperate with one another in an effort to maximize the collection of such cost report receivables.

8. Distribution of Recoveries on Avoidance Actions

Any recoveries received by the Trustee on or after the Settlement Effective Date in any Case from the prosecution or settlement of any Chapter 5 cause of action in such Case (each, an "Avoidance Action"), net of allowed expenses of collection, shall be distributed first to the holders of unpaid administrative expense claims in such Case (in the order of their respective priorities), with the balance applied on a pro rata basis to the payment of pre-petition priority claims in such Case and thereafter on a pro rata basis to the holders of pre-petition general unsecured claims in such Case. For purposes of this Paragraph D8 and elsewhere in this Settlement Term Sheet, (a) N/W shall be deemed to be the holder of a pre-petition general unsecured claim in an amount equal to $3,764,938 minus all amounts to be distributed on account of the Gemino Note pursuant to subparagraphs 1-5 and 12 of Paragraph D; (b) Cohesive shall be deemed to be the holder of a pre-petition general unsecured claim in an amount, in each of the Prague, Haskell, and Fairfax Cases, equal to the unpaid amount of pre-petition advances, post-petition advances (other than DIP financing), and pre-petition management fees in such Case; and (c) CBSG shall be the holder of a pre-petition general

unsecured claim against each of the Debtors, jointly and severally, in the amount of $1,350,000.

9. <u>Distribution of Recoveries on Non-Avoidance Actions</u>

If and to the extent that the Trustee recovers (through litigation or settlement) any monies on account of any cause of action arising in or related to any Case other than an Avoidance Action (each a "<u>Non-Avoidance Action</u>"), then the proceeds collected in respect of any such claim (net of collection costs) shall be remitted first to any person or entity (other than a Party) holding a duly perfected, unavoidable security interest in such claim or the proceeds thereof (in the order of lien priorities, if more than one such claimant) and the balance, if any, shall be remitted on a pro rata basis to the holders of pre-petition general unsecured claims in such Case.

10. <u>Payments on Account of Subordinated Trustee Related Claims</u>

As provided in Paragraph C1(b) above, the Subordinated Trustee Related Claims shall not be entitled to receive any distribution from available proceeds in any Case until all of the other allowed administrative expense claims under Section 503 of the Bankruptcy Code of the other Parties in such Case have been paid in full; but thereafter such Subordinated Trustee Related Claims in a Case shall be paid from any available funds in such Case other than funds representing recoveries of Non-Avoidance Actions in such Case.

11. <u>Responsibility for and Timing of Distributions</u>

The Trustee shall be responsible for making all distributions pursuant to the Settlement Agreement, unless otherwise provided in a confirmed Plan or order of the Bankruptcy Court. The initial distributions pursuant to the Settlement Agreement shall be made, in each Case, on a date (the "<u>Initial Distribution Date</u>") that is within 10 business days after the Settlement Effective Date, <u>provided</u> that, if prior to the Settlement Effective Date the Settlement Agreement is incorporated into a Plan, then the Initial Distribution Date in the Case in which such a Plan is filed shall be within 10 business days after the earlier to occur of the effective date of such Plan or the date on which the Bankruptcy Court enters an order declining confirmation of such Plan. After the initial distributions in a Case, subsequent distributions in such Case shall be made promptly after the Trustee's receipt in such Case of funds available for such distribution in accordance with the Settlement Agreement; <u>provided</u>, <u>however</u>, that the Trustee shall be authorized (a) to withhold, in each Case, a reasonable reserve for anticipated expenses of administering such Case; (b) to establish, in each Case, a carve-out for mediation and investigation expenses in accordance with Paragraph E2 below; and (c) on written notice from the mediator, to pay a Party's share of mediation expenses that such Party fails to pay within 30 days following the mediator's submission of an invoice to the Parties for the mediation expenses, whether or not such delinquent or defaulting Party ultimately elects to be a party to the Settlement Agreement, by deducting such delinquent amount from amounts otherwise distributable to (or set aside for) such Party (whether pursuant to the Settlement Agreement or otherwise), but the foregoing shall not be deemed to relieve any Party from its obligation to pay its agreed upon share of the mediation expenses. If at the time of any

distribution a Party's claim under Sections 503 or 507(b) of the Bankruptcy Code is disputed by the Trustee, in whole or in part, as authorized by Paragraph C1(a) hereof, then the Trustee shall set aside an amount that such Party would otherwise be entitled to receive pending a resolution of such objection by the Bankruptcy Court.

12. <u>N/W Administrative Expense Claim</u>

Provided that the aggregate distributions to N/W and CBSG on account of the Gemino Note (and, for purposes hereof, the N/W Subordination Distribution in the Fairfax Case shall not be deemed to be a distribution on account of the Gemino Note), without taking into account the N/W Subordinated Distribution to Cohesive under Paragraph D4(c), total at least the aggregate amount provided for in subparagraphs 1-5 of this Paragraph D, then N/W shall not have any post-petition administrative claim in any of the Cases. If, however, the aggregate distributions on account of the Gemino Note are less than the amounts projected for and allocated to N/W pursuant to subparagraphs 1-5 of this Paragraph D, then N/W shall have an administrative expense claim in each Case under Section 503(b) of the Bankruptcy Code in an aggregate amount equal to the shortfall; <u>provided</u>, <u>however</u>, that such administrative expense claim in each Case shall in no event exceed $0 in the Oswego Case, $132,302.54 in the Horton Case, $151,610.57 in the Prague Case, $8,100.65 in the Fairfax Case, and $1,076,970.20 in the Haskell Case.

**E.  Other Material Terms**

1. <u>Cooperation</u>:

The Parties shall cooperate with one another, diligently and in good faith, to implement the settlement terms, including the preparation of any and all ancillary documentation necessary or appropriate to implement the terms contained in the Settlement Agreement.

2. <u>Carve-Out for Mediation and Investigation Expenses</u>:

The Parties agree that, prior to any payment being made from any cash on hand in any Debtor's estate (whether prior to or after the Settlement Effective Date (as defined below)), the Trustee shall set aside (a) an amount necessary to pay the Debtors' share of the mediator's fees and expenses (to the extent allowed by the Bankruptcy Court) and (b) $80,000 to be paid by the Trustee to the McDonald Hopkins law firm, as special counsel to the Trustee in the Washington County, Prague, and Fairfax Cases, for investigation by that law firm of potential Non-Avoidance Actions (and each Party shall support the Trustee's request to pay such amount to that firm and the Trustee's authority to pay its percentage share of the mediator's fees and expenses).

3. <u>Collection of Pre-Sale Receivables</u>:

In accordance with the DIP financing orders, Cohesive shall continue to use its best efforts to collect and recover pre-sale receivables of each of Fairfax, Prague and Haskell, subject to compensation terms for such collection efforts that are agreed to between Cohesive and N/W,

with all proceeds to be remitted (with a full accounting) to N/W on a monthly basis; <u>provided</u> that Cohesive's compensation shall be paid solely and exclusively from the proceeds of such collections.

4. <u>Conditions Precedent</u>:

The effectiveness of the terms contained in the Settlement Agreement shall be conditioned upon, and shall be effective on the date of (the "<u>Settlement Effective Date</u>"), the entry by the Bankruptcy Court of an Approval Order in each Case, in form and substance reasonably satisfactory to the Parties, approving the Settlement Agreement; and such Approval Order having become final and not subject to further appeal or review on or before October 15, 2020.

5. <u>Trustee's 9019 Motion</u>:

Promptly (and in any event within five business days) after execution of the Settlement Agreement by the Parties, the Trustee shall file, in each Case, a motion under Bankruptcy Rule 9019 for approval by the Bankruptcy Court of the Settlement Agreement, and each of the other Parties agrees to support the Trustee's motion in each Case.

6. <u>Mutual Releases; Covenants Not to Sue</u>:

(a)     Effective upon the Settlement Effective Date, each Party shall be deemed to have released each other Party (together with such other Party's officers, agents, attorneys, employees, members, shareholders, heirs, executors, administrators, successors, and assigns and, in the case of the Trustee, each of the estates of the Debtors) from any and all liabilities, claims, actions, and causes of action that such Party may have against any other Party and that arise out of or relate to any Party's claims against, liens upon assets of, or payments to such Party by any of the Debtors; <u>provided</u>, <u>however</u>, that the foregoing release shall not operate to release (i) any Party from such Party's liabilities and obligations under the Settlement Agreement; (ii)  any Party from a cause of action for fraud by the Trustee based upon a Party's active knowledge, assistance, and/or participation in any fraudulent billing scheme engaged in by the Debtors pre-petition; or (iii) N/W from any claim that CBSG may have to a security interest in any promissory note that N/W (or any affiliate of N/W) may have obtained directly or indirectly from HAC, other than the Gemino Note. The Trustee represents to each of the other Parties that, as of the date of this Settlement Term Sheet, the Trustee is not aware of any other Party's knowledge of, assistance with, and/or participation in any fraudulent billing scheme engaged in by any Debtor; and the Trustee further represents that any potential claim for any such possible misconduct is being preserved solely because the Trustee has not completed his investigation, through counsel retained by him, of the relevant facts and circumstances.

(b)     Each Party will be deemed to have covenanted and agreed, effective on the Settlement Effective Date, not to file or continue to pursue any action, suit or other proceeding against another Party or against HAC or any member or manager of HAC in his capacity as such, with the sole exception of (i) any action, suit or other proceeding to

13

enforce the terms of the Settlement Agreement or (ii) a cause of action for fraud by the Trustee based upon a Party's active knowledge, assistance, and/or participation in any fraudulent billing scheme engaged in by the Debtors pre-petition.

7. <u>Dismissal of Adversary Proceeding</u>:

Promptly (and in any event within 10 days) after the Settlement Effective Date, the Trustee will dismiss, with prejudice, that certain adversary proceeding captioned <u>Waldrep v. Complete Business Solutions Group, Inc.</u>, AP No. 19-00138 (Bankr. E.D.N.C) (the "Adversary Proceeding"), and CBSG will concurrently dismiss, with prejudice, all crossclaims, counterclaims and third party claims against any Party and HAC in the adversary proceeding, with each Party to the adversary proceeding to bear such Party's own costs.

8. <u>Plan Confirmation/Conversion of Cases</u>:

At the election of the Parties, and as set forth in the Settlement Agreement, the Parties will determine whether the terms of the Settlement Agreement are to be incorporated into a Plan, but to be enforceable notwithstanding failure of any such Plan to be confirmed; or, if the Parties do not mutually agree to incorporate the terms of the Settlement Agreement into a Plan, the Trustee, with the support of the other Parties, will file a motion with the Bankruptcy Court for a conversion of the Chapter 11 Cases of each of the Debtors to Chapter 7 (with the Approval Order providing that the Settlement Agreement will nevertheless be enforceable in any Chapter 7 Case and binding on any Chapter 7 Trustee). Notwithstanding the foregoing, in no event shall any provision hereinabove for the distribution of any monies in any Chapter 11 Case to the holder of a pre-petition or post-petition claim, other than claims of the Parties, be effective in the absence of a confirmed plan in such Case, and any such monies otherwise distributable to a person or entity other than a Party as contemplated herein shall instead be distributed to the holders of allowed administrative claims, in the order of their respective priorities; and notwithstanding the entry of an Approval Order in any Chapter 11 Case that is later converted to a case under Chapter 7, the Chapter 7 Trustee's allowed administrative expenses shall supersede and be paid prior to the claims of any interested party in such Chapter 11 Case (including any Party) except to the extent of a Party's entitlement to such monies as the holder of an allowed secured claim with respect to proceeds of such Party's collateral (including, without limitation, such Party's pre-petition collateral and post-petition replacement collateral granted under orders of the Court).

9. <u>Inconsistencies</u>:

If and to the extent that any order entered by the Bankruptcy Court prior to the Settlement Effective Date contains any provision applicable to the claim or lien of a Party that is inconsistent with the Settlement Agreement, the provisions in the Settlement Agreement (except to the extent modified or expressly overridden by the Approval Order) shall govern and control.

**F. Miscellaneous Provisions**

1. <u>Integration/Merger</u>:

   This Settlement Agreement constitutes the entire understanding and agreement between the Parties with respect to the subject matter hereof and supersedes all prior and contemporaneous understandings and/or agreements, written or oral, regarding the subject matter of this Settlement Agreement.  No amendments, modifications, or additions of any kind relating to this Settlement Agreement shall be binding unless in writing and signed by the Parties.

2. <u>Choice of Law</u>:

   To the extent not governed by the Bankruptcy Code, this Agreement shall be governed by and construed in accordance with the laws of the State of North Carolina, without giving effect to rules governing the conflict of laws.

3. <u>Venue/Jurisdiction</u>:

   The parties agree that the Bankruptcy Court shall retain the exclusive and sole jurisdiction to resolve any controversy or claim arising out of or relating to this Agreement or the implementation or the breach hereof.  The parties consent to the core jurisdiction of the Bankruptcy Court, to the constitutional authority of the Bankruptcy Court to enter a final judgment, and agree to waive any right to a jury trial in connection with any disputes related to or arising out of this Agreement.

4. <u>Electronic/Facsimile Signatures</u>:

   This Settlement Agreement may be executed in one or more counterparts (whether manually signed or by facsimile or other electronic means), each such counterpart shall be deemed an original, and all such counterparts shall constitute one and the same agreement.

5. <u>Successors and Assigns</u>:

   The Settlement Agreement will be binding upon the Parties and their respective successors, administrators, heirs, executors, and assigns (each Party representing and warranting that it has not assigned, and will not assign, any claim that it has against any Debtor or any other Party or any lien that it may have against any property of any Debtor).

6. <u>Co-Authorship</u>:

   The Parties agree that the terms and language of this Settlement Agreement were the result of negotiations between the Parties, and all parties were represented by counsel in the course of negotiations. This Settlement Agreement shall not be construed for or against any Party by reason of the authorship or claimed authorship of any provision of this Agreement or by reason of the status of the respective Parties.

7. <u>Severability</u>:

If any term of this Agreement is to any extent illegal, otherwise invalid, or incapable of being enforced, such term shall be excluded to the extent of such invalidity or unenforceability; all other terms hereof shall remain in full force and effect.

## G. Modifications if CBSG Receiver Rejects Four-Party Settlement

If the Receiver rejects the Four-Party Settlement, such settlement shall be modified in the following ways:

1.  The claim of CBSG shall not be deemed to be allowed and shall be subject to objections by the Trustee and any party in interest.

2. CBSG shall not participate, either as a released Party or as releasing Party, in Paragraph E6 titled "Mutual Releases; Covenants Not to Sue."

3.    The Trustee will not dismiss that certain adversary proceeding captioned Waldrep v. Complete Business Solutions Group, Inc., AP No. 19-00138 (Bankr. E.D.N.C) (the "Adversary Proceeding"), and CBSG will not be required by this Agreement to dismiss any crossclaims, counterclaims, and third-party claims against any Party or any other entity.

4.    Because CBSG claimed to have a lien on the Fairfax real property, pending the outcome of the Adversary Proceeding the Trustee will escrow $645,000, which is the amount of the proceeds from the sale of the Fairfax real property. The source of this $645,000 placed into escrow shall be (i) the $405,000 attributable to the Fairfax real estate under Paragraph D.4(b) above, and (ii) a $240,000 portion of the CBSG Note Share. The portion of the CBSG Note Share that is not escrowed (totaling $105,000) shall be paid to N/W.

5.    If the claims of CBSG are disallowed, either by resolution of the Adversary Proceeding or otherwise, then (i) the $240,000 balance of the CBSG Note Share shall be distributed to N/W, and (ii) the $405,000 attributable to the Fairfax real estate shall be distributed first to the holders of unpaid administrative expense claims in such Case (in the order of their respective priorities), with the balance applied on a pro rata basis to the payment of pre-petition priority claims in each such Case and thereafter on a pro rata basis to the holders of pre-petition general unsecured claims in each such Case.

THOMAS W. WALDREP, JR., TRUSTEE FOR
CAH ACQUISITION COMPANY #2, LLC, d/b/a
OSWEGO COMMUNITY HOSPTIAL, CASE NO.
19-01230

By:_____
Thomas W. Waldrep, Jr.
Trustee

THOMAS W. WALDREP, JR., TRUSTEE FOR
CAH ACQUISITION COMPANY #3, LLC, d/b/a
HORTON COMMUNITY HOSPTIAL, CASE NO.
19-01180

By:_____
Thomas W. Waldrep, Jr.
Trustee


THOMAS W. WALDREP, JR., TRUSTEE FOR
CAH ACQUISITION COMPANY #7, LLC, d/b/a
PRAGUE COMMUNITY HOSPTIAL, CASE NO.
19-01298

By:_____
Thomas W. Waldrep, Jr.
Trustee


THOMAS W. WALDREP, JR., TRUSTEE FOR
CAH ACQUISITION COMPANY #12, LLC, d/b/a
FAIRFAX COMMUNITY HOSPTIAL, CASE NO.
19-01697

By:_____
Thomas W. Waldrep, Jr.
Trustee


THOMAS W. WALDREP, JR., TRUSTEE FOR
CAH ACQUISITION COMPANY #16, LLC, d/b/a
HASKELL COUNTY COMMUNITY HOSPTIAL,
CASE NO. 19-01227

By:_____
Thomas W. Waldrep, Jr.
Trustee


COHESIVE HEALTHCARE MANAGEMENT &
CONSULTING LLC

By:_____
Name:
Title:

17

PAUL L. NUSBAUM

_____

Paul L. Nusbaum


STEVEN F. WHITE

_____

Steven F. White


COMPLETE BUSINESS SOLUTIONS GROUP, INC.

By:_____

Ryan K. Stumphauzer
Receiver